IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | * |
| DANIEL L. ROCKWELL, et al, | |
| | * |
| Plaintiff, | |
| | * |
| v. | Civil Action No. RDB-13-3049 |
| | * |
| MAYOR & CITY COUNCIL | |
| OF BALTIMORE, et al, | * |
| | |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Demetria R. Holden ("Holden") and Daniel L. Rockwell ("Rockwell") bring this action against Defendants Detective Clyde Rawlins ("Detective Rawlins"), Detective Richard Manning ("Detective Manning"), School Police Officer Rodney Coffield ("Officer Coffield"), Department of Juvenile Services Officer Leo Zilka ("Officer Zilka"), and the Baltimore Police Department, asserting various claims under 42 U.S.C. §§ 1983, 1985, and 1986 and related Maryland state tort law arising from the Defendants' execution of an arrest warrant against Rockwell.[1]  Specifically, Plaintiffs allege that the tasing of Rockwell while he was standing on a second-story roof, resulting in his fall and sustaining of serious injuries, constituted excessive force under the Fourth and Fourteenth Amendments and additionally assert that the Defendants conspired to withhold information after the incident. In a flurry of motions, all Defendants have moved to dismiss the claims.  *See* ECF Nos. 8, 21, 22, and

---

[1] The Mayor and City Council of Baltimore were originally named in the suit but were voluntarily dismissed on November 25, 2012.  (ECF No. 42).  For the reasons that follow, the Clerk of this Court is instructed to re-caption this case "Daniel L. Rockwell, et al. v. Clyde Rawlins, et al."

1

31.   The parties' submissions have been reviewed, and this Court held a hearing on the motions on February 27, 2014.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, the Motions to Dismiss filed by Defendant Officer Zilka and Officer Coffield (ECF Nos. 8 and 31) are GRANTED.  In addition, the Motion to Dismiss of Detectives Manning and Rawlins (ECF No. 21) is GRANTED IN PART and DENIED IN PART; specifically it is GRANTED with respect to all claims against Detective Manning and with respect to Count III, Count IV, Count V, Count VI, Count IX, and Count X as to Detective Rawlins. Finally, Defendant Baltimore Police Department's Motion to Dismiss (ECF No. 22) is GRANTED IN PART AND DENIED IN PART; specifically, the Motion is granted with respect to all claims except Count XII asserting Fourth and Fourteenth Amendment violations under federal law.  Accordingly, for the reasons that follow, the Defendants Officer Zilka, Officer Coffield, and Detective Manning are DISMISSED from this case, and this action shall proceed against the Defendants Detective Rawlins and Baltimore Police Department.

<u>BACKGROUND</u>

This Court accepts as true the facts alleged in the plaintiffs' complaint.  *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).

This case arises out of the execution of a warrant to arrest Plaintiff Daniel L. Rockwell ("Rockwell") in Baltimore City, Maryland.  On February 8, 2011, Defendants Detective Clyde Rawlins ("Detective Rawlins"), Detective Richard Manning ("Detective Manning"), School Police Officer Rodney Coffield ("Officer Coffield"), and Department of Juvenile Services Officer Leo Zilka ("Officer Zilka") arrived at Plaintiffs' home at 4425

2

Wrenwood Avenue, Baltimore City, Maryland 21212 in order to execute the warrant.  Pls.'
Compl. ¶ 21.  Plaintiff Demetria Holden ("Holden") is the mother of Rockwell, who is
mentally challenged, and was a minor at the time.  *Id.* ¶¶ 1, 2.   At some point after the
Defendants' arrival, Rockwell exited his second story bedroom window and stood on the
roof of the house.  *Id.* ¶ 21.  It is undisputed that Defendant Rawlins subsequently tasered
Rockwell, causing Rockwell to fall from the roof to the ground and fracture his vertebrae.
*Id.*

Thereafter, Plaintiffs Rockwell and Holden retained counsel in order to file a civil
rights lawsuit.  *Id.* ¶ 27.  In order to identify the officers involved in the incident, Plaintiffs
requested the police report and other statements pertaining to the incident.  *Id.* ¶ 29.
Despite Plaintiffs' repeated efforts, the Plaintiffs were informed on at least two occasions
that the report was not available while several other attempts to obtain information were
simply denied.  *Id.* ¶¶ 29-38.  Ultimately, Plaintiff was able to obtain the information after
filing a suit against the Government Defendants, seeking production of the documents and
information.  *Id.* ¶ 43.

Thereafter, Plaintiff filed an action in the Circuit Court for Baltimore City asserting a
variety of federal and state claims for money damages against Defendants and the Baltimore
City Police Department ("BPD") (ECF No. 2).  Specifically, the Complaint alleged assault
(Count I), battery (Count II), false arrest (Count III), false imprisonment (Count IV),
intentional infliction of emotional distress (Count V), negligence (Count VI), gross
negligence (Count VII), negligent hiring, retaining, training, and supervision (Count VIII),
civil conspiracy (Count IX), violations of Articles 24 and 26 of the Maryland Declaration of

Rights (Counts X and XI), and federal claims under the Fourth and Fourteenth Amendments and 42 U.S.C. §§ 1983, 1985, and 1986 (Count XII). Zilka's Motion to Dismiss (ECF No. 8), as well as the original Plaintiff's Response brief (ECF No. 10), were filed in the state court. Thereafter, the Defendants removed the action to this Court pursuant 28 U.S.C. § 1446 and 28 U.S.C. § 1331, and the Detectives (Rawlins and Manning), Officer Coffield, and the Baltimore Police Department filed separate motions to dismiss (ECF Nos. 21, 22, and 31 respectively). Plaintiff filed a consolidated Response to the Motions of Zilka, the Detectives, and Coffield (ECF No. 40). Plaintiff also filed a separate Response brief to the BPD's motion (ECF No. 43). In addition, this Court held a motions hearing on February 27, 2013.

At the hearing, all parties agreed that, upon arrival at the Plaintiffs' home, Officers Zilka and Coffield remained outside of the home while Detective Rawlins entered the home.[2] The parties also agreed that Detective Rawlins was the officer who tased Rockwell. During the hearing, Plaintiffs agreed to dismiss numerous counts including the false arrest, false imprisonment , and negligence claims.[3] The Counts that remain are claims against Rawlins for assault and battery (Count I and II), intentional infliction of emotional distress

---

[2] At the February 27, 2014 hearing, Plaintiffs' counsel acknowledged that the status of the Complaint was essentially the same as to Officer Zilka, Officer Coffield, and Detective Manning. The only difference between the three was that Detective Manning was a member of the Baltimore City Police Department, just as Detective Rawlins.

[3] Specifically, counsel for Plaintiffs agreed to dismiss Count I (assault) and Count II (battery) with respect to all Defendants except Detective Clyde Rawlins. *See* Pls.' Resp. 17, ECF No. 40-1. In addition, Plaintiff agreed to dismiss Count III (false arrest), Count IV (false imprisonment), and Count VI (negligence) with respect to all Defendants. *See* Pls.' Resp. 17, 19, ECF No. 40-1. At the hearing, Plaintiff also agreed to the dismissal of Counts V (intentional infliction of emotional distress), Count VII (gross negligence), and the State Constitutional claims with respect to Officer Zilka, Officer Coffield, and Detective Manning.

(Count V), gross negligence (Count VII), civil conspiracy (Count IX), Maryland Declaration

of Rights claims (Count X and XI), and violations of the Fourth and Fourteenth

Amendment and 42 U.S.C. § 1983, 1985, and 1986 (Count XII); claims against Zilka,

Coffield, and Manning for state and federal conspiracies (Counts IX, X, XII); and claims

against the BPD for negligent hiring, retaining, training, and supervision (Count VIII), civil

conspiracy (Count IX), violations of the Maryland Declaration of Rights (Counts X and XI),

and federal conspiracies (Count XII).

<u>STANDARD OF REVIEW</u>

Defendants Baltimore City Police Department, Officer Zilka, and Officer Coffield

move this Court to dismiss Plaintiffs' claims or, in the alternative, enter summary judgment.

A motion of this type implicates the Court's discretion under Rule 12(d) of the

Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788

F.Supp.2d 431, 436–37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside

the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S.*

*Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its

discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the

court does so, "the motion must be treated as one for summary judgment under Rule 56,"

but "[a]ll parties must be given a reasonable opportunity to present all the material that is

pertinent to the motion." Fed. R, Civ. P. 12(d). When the movant expressly captions its

motion "in the alternative" as one for summary judgment, and submits matters outside the

pleadings for the court's consideration, the parties are deemed to be on notice that

conversion under Rule 12(d) may occur; the court "does not have an obligation to notify

parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed.2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165–67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. de Nemours & Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448 (4th Cir.2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir.2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir.1996)). Generally, to raise adequately the issue that discovery is needed, the party opposing the motion must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.

Fed.R.Civ.P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)).

In this case, the Baltimore Police Department has urged this Court to convert the Motions and enter judgment against Plaintiffs due to Plaintiffs' purported failure to comply with the requirements of a Rule 56(d) affidavit. *See* BPD's Reply 3-6, ECF No. 49. Specifically, the Department argues that the declaration of Plaintiffs' counsel (attached to Plaintiffs' Response brief) is inadequate and that the Plaintiffs themselves should have provided an affidavit describing the specific reasons that they needed discovery. However, it is well-established that this Court is afforded great discretion in determining the treatment of such motions, and that "[w]hen the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery, and when fact-intensive issues, such as intent, are involved, courts have not always insisted on a [Rule 56(d)] affidavit if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary." *Harrods*, 302 F.3d at 244. In this case, the precise factual circumstances surrounding the tasing have not yet been addressed, and Plaintiffs, through counsel, have repeatedly requested an opportunity for discovery. Accordingly, this Court finds that Defendants' Motions will be treated as motions to dismiss under Rule 12(b)(6).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests

surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Id.* at 679. Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

<u>ANALYSIS</u>

**I.   <u>Plaintiff Holden's Claims</u>**

The Complaint names Demetria R. Holden as a Plaintiff in this action; in the Plaintiffs' Response brief (ECF No. 40-1), Plaintiffs clarify that Holden's claims arise out of

her status as Plaintiff Rockwell's mother. *See* Pls.' Resp. 13, ECF No. 40-1 (citing *Garay v. Overholtzer*, 332 Md. 339, 346, 631 A.2d 429, 432 (Md. 1993)). Specifically, Plaintiffs argue that because Rockwell was a minor at the time of injury and that Holden incurred medical expenses in caring for her son, Holden may recover under Maryland law. *See* Pls.' Resp. 13-14, ECF No. 40-1. In his Reply brief, Detective Rawlins asserts that Holden's claims must still be dismissed; specifically, he contends that the Plaintiffs may only recover medical expenses under the assault and battery charges, which he argues must fail as a matter of law. Dets.' Reply 1-2, ECF No. 46. As discussed below, however, Plaintiffs have adequately stated claims for assault and battery against Detective Rawlins. Moreover, Plaintiffs may recover for medical costs pertaining to Detective Rawlins' alleged excessive use of force under the state constitutional claims and the gross negligence claim.

No party has directly addressed the issue whether Plaintiff Holden may recover as Rockwell's parent under federal law.[4] However, because Plaintiff has not alleged any direct injury to Holden and because Plaintiffs have failed to provide any case law indicating such a theory is permitted under federal law, this Court will dismiss Holden's federal claims.[5] *Cf. Jones v. Prince George's Cnty.*, Civ. A. No. AW-04-1735, 2005 WL 1074353, at *4-6 (D. Md. Apr. 28, 2005) (dismissing § 1983 claim under Fourth and Fourteenth Amendment because no government action directly targeting parental relationship).

---

[4] However, Detective Rawlins' initial memorandum in support of his Motion addressed Holden's federal claims, albeit under a different theory, thereby raising the issue.

[5] As Rockwell is no longer a minor, there is no reason for Holden to assert federal claims on behalf of her son.

## II.   Claims Solely Against Defendant Detective Rawlins  due to the Tasing

### A. Federal Claims

#### 1.   Violation of the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983

Rockwell alleges that the tasing violated his Fourth and Fourteenth Amendment rights, thereby also triggering 42 U.S.C. §§ 1983.  Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

28 U.S.C. § 1983.  Section 1983 does not create "substantive rights"; instead, the statute provides "a method for vindicating federal rights elsewhere conferred."  *Thompson v. Dorsey*, Civ. A. No. ELH-10-1364, 2011 WL 2610704, at *3 (D. Md. June 30, 2011) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

In this case, Rockwell alleges a violation of the Fourth and Fourteenth Amendment. Under the Fourth Amendment,[6] individuals have the "right to be free from unreasonable

---

[6] Rockwell provides no explanation or argument for a claim under the Fourteenth Amendment directly (although, of course, his Fourth Amendment claim survives due to the incorporation of the Fourth Amendment against the states under *Ker v. California*, 374 U.S. 23 (1963)).  As Rockwell's claim pertains to the manner in which Detective Rawlins effectuated his arrest, the Fourth Amendment is the governing standard. *See Sawyer v. Asbury*, 537 F. App'x 283, 290 (4th Cir. 2013) ("[C]laims for the use of excessive force in effectuating an arrest or other seizure are governed by the Fourth Amendment's prohibition against 'unreasonable' seizures; claims of excessive force against a convicted prisoner are governed by the Eighth Amendment's prohibition of 'cruel and unusual punishment'; and claims of post-arrest excessive force against

searches and seizures, which encompasses the right to be free of arrests, investigatory stops, or other seizures effectuated by excessive force." *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006). Courts determine whether the force used to effectuate the arrest was excessive by examining whether the officer's "actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

In support of his Motion to Dismiss, Detective Rawlins argues that a few cases—most relevantly, *McKenney v. Harrison*, 635 F.3d 354, 359 (8th Cir. 2011)—have found that there is no violation of the Fourth Amendment where officers use a taser on a fleeing suspect when other options of apprehension pose dangers to the arresting officers. *See* Defs.' Mem. Supp. Mot. Dismiss 16-18, ECF No. 21-1. The *McKenney* case and other cases cited by Detective Rawlins were decided at the summary judgment stage. In the context of the pending Motions to Dismiss, there has been no factual development of the use of a taser in this case.

### 2. Qualified Immunity

Qualified immunity "is an affirmative defense that shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013) (internal quotation marks omitted); *see also Harlow v. Fitzgerald*, 457

---

an arrestee or pre-trial detainee . . . are governed by the Due Process Clause of the Fourteenth Amendment, which prohibits before conviction 'the use of excessive force that amounts to punishment,'" quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989))

U.S. 800, 818 (1982).[7]  The doctrine is intended to apply to "gray areas, where the law is unsettled or murky," rather than situations where the government actors were "plainly incompetent or . . . knowingly violate[d] the law."  *Occupy Columbia*, 738 F.3d at 118.  Thus, qualified immunity shields government officials from § 1983 claims unless "(1) the allegations underlying the claim, if true, substantiate a violation of federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known."  *Id.*

The allegations in the Complaint are sufficient to survive Rawlins' motion to dismiss on the basis of qualified immunity.  As indicated above, Plaintiffs' Complaint alleges a violation of Rockwell's constitutional rights—specifically, Plaintiffs claims that Rawlins tased Rockwell, a mentally disabled minor, while standing on a second story roof, causing him "to fall from the roof to the ground."  Pls.' Compl. ¶ 21.  Per the allegations in the Complaint, Rockwell was on a second-story roof posing "no danger" to Detective Rawlins before Rawlins tased Rockwell.  *Id.*  Rawlins's qualified immunity depends upon the factual questions surrounding Plaintiffs' Fourth Amendment claims, namely whether Rawlins's actions were objectively reasonable.  Given the undeveloped facts of the case, this Court is unable to make any final ruling on the availability of qualified immunity at this early stage in this litigation.

---

[7] Generally, motions to dismiss pursuant to Rule 12(b)(6) address the legal sufficiency of a complaint rather than the existence of meritorious affirmative defenses; however, when the existence of such a meritorious defense—such as qualified immunity— is apparent on the face of the complaint, dismissal is appropriate. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013).  Thus, this Court will address the issue of qualified immunity by examining the allegations contained in the Complaint.

### B. State Claims

#### 1. Assault & Battery Claims (Counts I & II)

Under Maryland law, "assault is defined as an 'attempt to cause a harmful or offensive contact with another or to cause an apprehension of such contact.'" *Miles v. DaVita Rx, LLC*, Civ. A. No. CCB-12-854, 2013 WL 4516468, at *8 (D. Md. Aug. 23, 2013) (quoting *Wallace v. Poulos*, 861 F. Supp. 2d 587, 596 n. 9 (D. Md. 2012)). Similarly, a "battery is a harmful or offensive contact with a person resulting from an act intended to cause the person such contact." *Northfield Ins. Co. v. Boxley*, 215 F. Supp. 2d 656, 661 (D. Md. 2002) (citing *Saba v. Darling*, 320 Md. 45, 575 A.2d 1240, 1242 (1990)). Generally, however, "[t]he use of *reasonable* force to effectuate an arrest defeats a battery or an assault claim" because "officers are subject to commit a battery pursuant to a lawful arrest, *subject to the excessive force limitation*." *French v. Hines*, 182 Md. App. 201, 265-66 (Md. Ct. Spec. App. 2008) (quoting Sonja Larsen & Thomas Muskus, 6A C.J.S. *Assault* § 35 (2008 Supp.)) Therefore, a "law enforcement officer is not liable for assault and battery or other tortious conduct performed during the course of his official duties unless he acted with actual malice toward the plaintiff, i.e. with ill will, improper motivation, or evil purpose." *Radbod v. Arias*, Civ. A. No. RDB-10-897, 2011 WL 630752, at *4 (D. Md. Feb. 11, 2011).

In this case, Detective Rawlins argues that the assault and battery claims must fail because he acted reasonably under the circumstances pursuant to a valid arrest warrant. The Complaint, however, alleges that "individual Defendants, including Defendant Rawlins, who were in no danger, acted as no reasonable police officer in said officer's positions would have acted, and tased [Rockwell], causing [Rockwell] to fall from the roof to the ground, and

causing [Rockwell] to sustain severe bodily injuries . . . ."  Pls.' Compl. ¶ 21.  Rockwell also alleges that Rawlins acted "intentionally and maliciously," *id.* ¶¶ 55, 60, "without any proper reason and without provocation," *id.* ¶ 22, and with "excessive uses of force," *id.* ¶ 24.   As the Complaint provides no factual basis for believing that the use of the taser was reasonable, the issue of Detective Rawlins' privilege to use a taser under the circumstances is a factual question that would be inappropriate to decide at this stage of the proceeding.  *See id.* ¶ 21 (asserting that Rockwell posed "no danger" to any of the Defendants).  Accordingly, Plaintiffs have adequately pled causes of action for assault and battery against Detective Rawlins.

### 2.   Intentional Infliction of Emotional Distress (Count V)

The fifth claim of the Complaint alleges that Rawlins intentionally inflicted emotional distress on Rockwell.  Under Maryland law, a plaintiff must allege the following elements to state a claim for intentional infliction of emotional distress: "(1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Carter v. Aramark*, 153 Md. App. 210, 245 (2003).  In general, Maryland courts have only imposed liability sparingly and have limited the tort to situations where the "wounds are truly severe and incapable of healing themselves." *McDaniel*, 2010 WL 3260007, at *9 (quoting *Solis v. Prince George's Cnty.*, 153 F. Supp. 2d 793, 804 (D. Md. 2001)).  Accordingly, Maryland courts require the element of severe emotional distress to be pled with particularity.  *See McDaniel*, 2010 WL 32620007, at *9.

In this case, the sole allegations in the Complaint pertaining to emotional distress are that Plaintiffs suffered "pain and suffering" and "mental anguish." Pls.' Compl. ¶¶ 26, 77. These allegations fail to plausibly allege the extreme and severe emotional distress necessary to satisfy the requirements of Maryland law, and as such, the claim must be dismissed.

### 3.   Gross Negligence (Count VII)

Plaintiffs' Count VII asserts a claim for gross negligence.  Under Maryland law, gross negligence entails:

> an intentional failure to perform a manifest duty in reckless disregard of the consequences as *affecting the life or property of another*, and [it] also implies a thoughtless disregard of the consequences without an exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.

*Barbre v. Pope*, 402 Md. at 187, 935 A.2d at 717 (emphasis added).  Accordingly, the definition of gross negligence makes clear that some danger to person or property is necessary. Indeed, the cases in which allegations of gross negligence survive generally appear to involve operation of motor vehicles, shootings, or other conduct involving a high degree of danger to person or property.  *See id.* (discussing variety of cases involving allegations of gross negligence); *cf. Yarn v. Hamburger Law Firm, LLC*, Civ. A. No. RDB-12-3096, 2013 WL 5375462, at *9 (D. Md. Sept. 24, 2013) (discussing limits of gross negligence tort).

In this case, Plaintiffs allege that Detective Rawlins tased Rockwell while he stood outside on a second-floor ledge or roof without any provocation. Certainly, the tasing posed a physical risk to Rockwell—a risk that was magnified by Rockwell's location at the time.  As

Plaintiffs have also alleged that Detective Rawlins acted with malice, Plaintiffs have adequately stated a claim for gross negligence as to Detective Rawlins.

### 4. State Constitutional Claims – Violation of Articles 24 and 26 of the Maryland Declaration of Rights (Counts X & XI)

Plaintiffs' tenth and eleventh counts allege violations of Articles 24[8] and 26[9] of the Maryland Constitution's Declaration of Rights. These provisions are the state analog to the federal Fourteenth and Fourth Amendments respectively, and they are analyzed *in pari materia*.[10] *See McDaniel*, 2010 WL 3260007, at *10. As this Court has already found that Rockwell has stated a claim for Fourth Amendment violations, Plaintiffs have adequately

---

[8] Article 24 of the Maryland Declaration of Rights states that:

> That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

MD Constitution, Declaration of Rights, Art. 24.

[9] Article 26 of the Maryland Declaration of Rights states:

> That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted.

MD Constitution, Declaration of Rights, Art. 26.

[10] While the rights protected Articles 24 and 26 of the Maryland Declarations of Rights are the same as those protected by the Fourth and Fourteenth Amendment, the procedures in which those rights are enforced and the immunities available to defendants differ. For example, violations of Maryland constitutional rights may be pursued in common law actions for damages, while § 1983 provides the mechanism for civil enforcement of federal constitutional violations. *See DiPino*, 354 Md. at 50. In addition, the defense of qualified immunity, which protects law enforcement agents from federal claims when they act in objectively reasonable reliance on existing law, does not shield the officers from claims arising under the Maryland Declaration of Rights. *See McDaniel*, 2010 WL 3260007, at *10; *see also DiPino v. Davis*, 354 Md. 18, 51 (1991) ("Proof that the official acted in objectively reasonable reliance on existing law, which would exempt an official from liability under § 1983, may be relevant to whether the official committed a violation, but it does not provide an immunity should a violation be found. That is one major difference between the Federal and State jurisprudence").

stated a claim for violation of Articles 26 of the Maryland Declaration of Rights.   As Rockwell has not adequately explained how Detective Rawlins violated his Fourteenth Amendment rights with respect to the tasing alone, the Article 24 claims must be dismissed.

### III.   Conspiracy-Related Claims Against All Defendants Arising After the Tasing and Arrest

Rockwell asserts several claims for conspiracy; specifically, Plaintiffs' ninth claim is for "civil conspiracy," while Rockwell's twelfth claim arises under, *inter alia*, 42 U.S.C. § 1985 and § 1986.   At the hearing on February 27, 2014, Plaintiffs' counsel clarified that the remaining claims as to these officers arose out of alleged conspiracies among the various Defendants.   During the course of these proceedings, Rockwell has alleged two separate conspiracy theories.   Initially, Rockwell alleged that the Defendants conspired to withhold the police report and various documents.   Subsequently, Rockwell has also alleged that the Defendants colluded with respect to their post-incident statements.

The Complaint, however, does not even mention the Defendants' post-incident statements, and as such, Rockwell's subsequent allegations with regards to those statements cannot save the claims from dismissal.   *See Redding v. Ameriprise Auto & Home Ins.*, No. DKC-11-3141, 2012 WL 1268327, at *4 n.6 (D. Md. Apr. 13, 2012) ("[I]t is axiomatic . . . that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107) (7th Cir. 1984)).   Thus, this Court will only address the claims with respect to the alleged withholding of documentation.[11]

---

[11] However, at the hearing held on February 27, 2014, this Court invited argument with respect to the alleged collusion on the Defendants' post-incident statements.   While this Court makes no ruling on the issue, there appears to be no factual basis to support the necessary elements of a conspiracy (under state or federal law).

### A.  Section 1983 Conspiracy

Although the Complaint is not clear on the point, Rockwell arguably alleges a conspiracy under § 1983 for a violation of his Fourteenth Amendment rights due to the withholding of information related to his case.  In order to establish a civil conspiracy under § 1983, the plaintiff must allege that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right."  *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996).  Even if Rockwell had intended to allege such a civil conspiracy under federal law, he has not adequately pled the facts necessary to establish the existence of a conspiracy. Conspiracy claims must fail if they are pled in a conclusory manner and devoid of "concrete, supporting facts."  *See A Society Without A Name v. Virginia*, 655 F.3d 342, 346-47 (4th Cir. 2011) (affirming dismissal of § 1985 claim accompanied by only conclusory allegations); *see also Gooden v. Howard Cnty.*, 954 F.2d 960, 969-70 (4th Cir. 1992) (en banc) ("To avoid evisceration of the purposes of qualified immunity, courts have thus required that plaintiffs alleging unlawful intent in conspiracy claims under § 1985(3) or § 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss.").  Rockwell fails to allege any specific facts supporting the existence of an agreement or meeting of the minds and thus falls far short of an adequately pled claim for conspiracy.[12]

---

[12] This Court notes that the allegations contained in Count Nine for civil conspiracy add no further factual details regarding the existence of a conspiracy.

**B.  Section 1985 Claim**

Section 1985 creates a private cause of action for conspiracies to violate individuals'
civil rights.   Specifically, § 1985(2) prohibits conspiracies to impede, hinder, or obstruct
justice in a court of a state or territory in order to deny equal protection of the laws.   *See*
*McHam v. North Carolina Mut. Life Ins. Co.*, No. 05-cv-1168, 2007 WL 1695914, at *4 & n.2
(M.D.N.C. June 11, 2007).   Similarly, § 1985(3) creates a cause of action where "two or more
persons . . . conspire . . . for the purposes of depriving, either directly or indirectly, any
person . . . of the equal protection of the law, or of equal privileges and immunities under
the law." In order to establish a claim under § 1985(3), the plaintiff must prove that:

> (1) a conspiracy of two or more persons, (2) who are motivated
> by a specific class-based, invidiously discriminatory animus to
> (3) deprive the plaintiff of the equal enjoyment of rights secured
> by the law to all, (4) and which results in injury to the plaintiff as
> (5) a consequence of an overt act committed by the defendants
> in connection with the conspiracy.

*A Society Without A Name*, 655 F.3d at 346 (citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir.
1995)).   Whether a plaintiff intends to proceed under § 1985(2) or § 1985(3), the Complaint
must sufficiently allege "an agreement or a meeting of the minds by [the] defendants to
violate the [plaintiff's] constitutional rights." *Id.* (quoting *Simmons*, 47 F.3d at 1377); *see also,*
*Simmons*, 47 F.3d at 1377 (noting that this is a "relatively stringent" standard).

In this case, Plaintiffs assert conspiracy claims under § 1985(2) for impeding or
obstructing justice in a state court in order to deny equal protection of the laws and under §
1983(3) for depriving Plaintiffs of the equal protection of the law and/or of equal privileges
and immunities under the law.   Under both of these theories, the objective of the conspiracy
must be to deprive the victims of their equal protection rights. *Kush v. Rutledge*, 460 U.S. 719,

725, 103 S. Ct. 1483, 1487, 75 L. Ed. 2d 413 (1983) ("The second part of § 1985(2) applies to conspiracies to obstruct the course of justice in state courts, and the first part of § 1985(3) provides a cause of action against two or more persons who 'conspire or go in disguise on the highway or on the premises of another.' Each of these portions of the statute contains language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws.").

For the same reasons discussed above with respect to a § 1983 conspiracy, Plaintiffs' allegation are insufficient to state a claim under § 1985.  Moreover, there is no allegation in the Complaint that Rockwell is a member of a protected class.

### C.  Section 1986 Claim

Under 42 U.S.C. § 1986, a plaintiff may bring an action for damages against any person who, having knowledge of and the ability to prevent the alleged § 1985 conspiracy, neglected to do so. *Brisset v. Paul*, 141 F.3d 1157, at *3 (4th Cir. 1998) (unpublished); *Burnett v. Grattan*, 468 U.S. 42, 44 n.5 (1984). Due to the interrelation between § 1986 and § 1985 claims, if a "§ 1985 claim is meritless, the § 1986 claim fails as well." *Brisset*, 141 F.3d 1157, at *3.  Because this Court finds that Plaintiffs have failed to state a § 1985 claim for conspiracy, they have failed to state a § 1986 claim as well.

### D. State Claims

#### 1. Civil Conspiracy

Under Maryland law,[13] there is no separate tort for civil conspiracy; instead, a civil conspiracy theory merely serves to extend liability to the co-conspirators after some other tortious conduct is established. *See McDaniel v. Maryland*, Civ. A. No. RDB-10-189, 2010 WL 3260007, at *11 (D. Md. Aug. 18, 2010). Accordingly, Plaintiffs' claim cannot state a valid cause of action and will be dismissed.[14] *Accord Lee v. Queen Anne's County Office of the Sheriff*, Civ. A. No. RDB-13-672, 2014 WL 476233, at *16 (D. Md. Feb 5, 2014); *McDaniel*, 2010 WL 3260007, at *11.

#### 2. State Constitutional Claim under Article 24 of the Maryland Declaration of Rights

As noted above, Article 24 of the Maryland Declaration of Rights is the state analog to the Fourteenth Amendment of the U.S. Constitution. As Plaintiffs have failed to adequately allege a conspiracy to violate Rockwell's Fourteenth Amendment rights, Rockwell has also failed to allege a conspiracy under Article 24.

---

[13] Although Plaintiffs do not specify whether they intended to bring the "civil conspiracy" claim under state or federal law, this Court finds it quite clear that Plaintiffs intended this to be a state-law claim as Plaintiffs' brief cites to Maryland case law for the elements of the claim. *See* Pls.' Resp. 20-21, ECF No. 40-1. An independent federal cause of action for civil conspiracy does exist, but it arises under § 1983. *See McDaniel*, 2010 WL 3260007, at *11. Such federal conspiracies are discussed in the next subsection.

[14] In addition, as discussed below, Rockwell has also failed to plausibly allege any factual details to support the existence of a conspiracy. *See supra* Part III.A.

## IV.  **Claims Against the Baltimore Police Department**

### A. Federal Claims

Section 1983 requires that a "person" cause a deprivation of an individual's federal rights.  42 U.S.C. § 1983.  In *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), the Supreme Court of the United States determined that state agencies are not "persons" for purposes of § 1983 and, therefore, cannot be held liable under the statute.  *See id.* at 71.  As the weight of authority from this Court indicates, the Baltimore Police Department is not a state agency for Eleventh Amendment purposes and, therefore, can be held liable under § 1983.  *See Brown v. Tshamba*, Civ. A. No. RDB-11-609, 2011 WL 2935037, at *5 (D. Md. July 18, 2011) (Bennett, J.); *Hall v. Baltimore City Police Dep't*, Civ. A. No. RDB-09-333, 2009 WL 3247782, at *3 (D. Md. Oct. 6, 2009) (Bennett, J.); *Munyiri v. Haduch*, 585 F. Supp. 2d 670, 676 (D. Md. 2008) (Davis, J.); *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 548 (D. Md. 2003) (Blake, J.); *Hector v. Weglein*, 558 F. Supp. 194, 197-99 (D. Md. 1982) (Kaufman, J.).[15] The Court of Special Appeals of Maryland has clearly recognized that, despite its classification under Maryland law, the Baltimore Police Department is not a state agency for

---

[15] This Court recognizes, however, that there are a few cases from other judges of this Court holding that the Eleventh Amendment barred § 1983 actions against the Baltimore Police Department.  *See Gardner v. Harper*, Civ. A. No. GLR-11-1919, 2012 WL 326 WL 3263848, at *3 (D. Md. Aug. 8, 2012); *Dixon v. Baltimore City Police Department*, 345 F. Supp. 2d 512, 513 (D. Md. 2003); *Gayden v. Baltimore City Police Department*, Civ. A. No. WDQ-03-337, 2003 WL 23573426, at *1 (D. Md. July 3, 2003).  These cases are properly limited to their facts, and should not in any way detract from the long-standing view of this Court that the Baltimore Police Department is not a state agency for the purposes of the Eleventh Amendment.  Indeed, it is well-established that applicability of the Eleventh Amendment requires an analysis above and beyond the State's characterization of an entity under its own laws.  *See, e.g.*, *Cash v. Granville County Bd. of Educ.*, 242 F.3d 219, 223-24 (4th Cir. 2001) (discussing test for determining whether entity is a state agency for the purposes of Eleventh Amendment sovereign immunity).

the purposes of the Eleventh Amendment with respect to federal claims.  *See, e.g., Blades v. Woods*, 108 Md. App. 178, 181-82, 667 A.2d 917 (Md. Ct. Spec. App. 1995).

Under *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658 (1978), a § 1983 cause of action may lie against a local government or municipality when execution of the government's unconstitutional policy or custom causes a plaintiff injury.  *See Walker v. Prince George's Cnty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009) (stating that the liability of the municipality only arises where the employees' unconstitutional actions are taken in furtherance of a municipal policy or custom).  In order to support a claim, however, "(1) the municipality must have actual or constructive knowledge of the custom and usage by its responsible policymakers, and (2) there must be a failure by those policymakers, as a matter of specific intent or deliberate indifference, to correct or terminate the improper custom and usage."  *Randall*, 302 F.3d at 210 (internal quotation marks omitted).  Moreover, there must be a "direct causal link" between the policy or custom and the deprivation of rights.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 386-86 (1989); *see also Huggins v. Prince George's Cnty, Md.*, 750 F. Supp. 2d 549, 554 (D. Md. 2010).

In some circumstances, a failure to properly train officers can give rise to *Monell* liability.  *See Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) ("A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law."

(internal quotation marks omitted)).   Specifically, liability under § 1983 "may attach if officers are not adequately trained in relation to the tasks the particular officers must perform, and this deficiency is closely related to the ultimate injury."   *Id.* at 473 (internal quotation marks omitted).   Moreover, the Fourth Circuit has made clear that, with respect to inadequate training claims, liability will only arise "if it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations."   *Id.* at 474.

In this case, the Complaint alleges illegal patterns and practices of the Baltimore Police Department regarding the "unlawful use of Electronic Shock Devices ("ESD"), failure to investigate and discipline police officers who violate citizens' civil rights in the use of ESD's, denying access to public records, covering-up police violations and conspiring cover-up the aforesaid civil rights violations."   Pls.' Compl. ¶ 48.   Although the Complaint contains greater specificity with respect the claims regarding the actual tasing, the more general allegations with respect to the Baltimore Police Department are adequate to survive the Department's Motion to Dismiss.   *Cf. Brown v. Bailey*, Civ. A. No. RDB-11-1901, 2012 WL 2188338, at *4 (D. Md. June 13, 2012).

### B.  State Claims

Plaintiffs assert several claims against the Baltimore Police Department under various provisions of Maryland state law.[16]   While the Baltimore Police Department does not have sovereign immunity under the Eleventh Amendment with respect to the federal claims in this case, the issue of the Department's Maryland common-law sovereign immunity is

---

[16] Specifically, Count VIII asserts a claim for negligent hiring, retaining, training, and supervision, while Counts X and XI allege violations of the Maryland Declaration of Rights.

another matter.   Because the Department is a state agency under Maryland law, *see* Code of Public Local Laws of Baltimore City, Art. 4, § 16-2(a), Maryland courts have afforded the Baltimore City Police Department with *state* common law sovereign immunity for tort claims for damages.   *See Baltimore Police Dep't v. Cherkes*, 140 Md. App. 282, 780 A.2d 410, 424 (Md. Ct. Sp. App. 2001); *Brown v. Tshamba*, 2011 WL 2935037, at *7; *Chin v. City of Baltimore*, 241 F. Supp. 2d at 548.   As the State has not waived its immunity with respect to the type of claims involved here, Plaintiffs' state law claims against the Baltimore City Police Department will be dismissed.

<u>CONCLUSION</u>

For the reasons stated above, the Motions to Dismiss filed by Defendant Officer Zilka and Officer Coffield (ECF Nos. 8 and 31) are GRANTED.   In addition, the Motion to Dismiss of Detectives Manning and Rawlins (ECF No. 21) is GRANTED IN PART and DENIED IN PART; specifically it is GRANTED with respect to all claims against Detective Manning and with respect to Count III, Count IV, Count V, Count VI, Count IX, and Count X as to Detective Rawlins.   Finally, Defendant Baltimore Police Department's Motion to Dismiss (ECF No. 22) is GRANTED IN PART AND DENIED IN PART; specifically, the Motion is granted with respect to all claims except Count XII asserting Fourth and Fourteenth Amendment violations under federal law.[17]   Accordingly, for the reasons that follow, the Defendants Officer Zilka, Officer Coffield, and Detective Manning

---

[17] As this Court finds that the Complaint states only a valid claim for excessive force under the Fourth Amendment, the Court's reference to the Fourteenth Amendment merely recognizes that Amendment's role in incorporating rights protected by the Fourth Amendment against the States under *Ker v. California*, 374 U.S. 23 (1963)).   *See supra* note 6.

are DISMISSED from this case, and this action shall proceed against the Defendants

Detective Rawlins and Baltimore Police Department.

A separate Order follows.

Dated:          March 11, 2014                    _____/s/_____

Richard D. Bennett
United States District Judge