**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

DANIEL L. ROCKWELL, ET AL.          *

     Plaintiffs          *

vs.          *          Civil Action No.: 1:13-cv-03049-RDB

DETECTIVE CLYDE RAWLINS, ET AL.          *

     Defendants          *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM IN SUPPORT OF PLAINTIFFS, DANIEL L. ROCKWELL'S AND DEMETRIA R. HOLDEN'S RESPONSE TO DEFENDANT, DETECTIVE CLYDE RAWLINS' MOTION FOR SUMMARY JUDGMENT

Daniel L. Rockwell and Demetria R. Holden, Plaintiffs, by their attorney, Michael S. Greene,

Esquire, submit this Memorandum in Support of their Response to Defendant, Detective Clyde

Rawlins' Motion for Summary Judgment (ECF No. 67)[1], and state:

## I.          INTRODUCTION

### A.          Introductory Statement Of The Case

This civil action arises out of an encounter that occurred in February of 2011 at the former

residence of Plaintiffs, Demetria R. Holden and Daniel L. Rockwell, at 4425 Wrenwood Avenue,

Baltimore City, Maryland 21212.  That encounter involved (1) Plaintiffs, Daniel L. Rockwell

("Rockwell"), a mentally-challenged person and a minor at the time of the encounter, and his

mother, Demetria R. Holden ("Holden"), and (2) Defendant, Detective Clyde Rawlins ("Rawlins")

and other identified officers:  Detective Richard Manning ("Manning"), School Police Officer

---

[1] Defendant, Detective Clyde Rawlins' Motion for Summary Judgment (ECF No. 67), as well as
accompanying Memorandum of Law (ECF No. 67-1) and other accompanying papers, were filed
with the Court on July 25.  By agreed extension, approved by the Court, Plaintiffs have until August

Rodney Coffield ("Coffield"), and Department of Juvenile Services Officer Leo Zilka ("Zilka"). After a civil Complaint filed in the Circuit Court for Baltimore City, on or about October 11, 2013, Defendant, BPD filed with this Court, pursuant to 28 U.S.C. §1441, a Notice of Removal.

By way of background, only, for the Court's information, Plaintiffs identify certain factual allegations of the Complaint.  On February 8, 2011, Plaintiffs, Demetria R. Holden and Daniel L. Rockwell, were at the Wrenwood Avenue home.  Officers Rawlins, Manning, Coffield, Zilka, and/or any unknown members of the Warrant Apprehension Task Force ("WATF") came to the home, purporting to serve a warrant on Mr. Rockwell.  *See* Complaint (¶ 21).  Plaintiff Mr. Rockwell, who is mentally challenged, exited his second story bedroom through a window and was on the second story roof, when Defendant Detective Rawlins (who was in no danger, and who allegedly acted as no reasonable police officer would have in the circumstances) tased Daniel, causing Daniel to fall from the roof to the ground, and causing Daniel to sustain severe bodily injuries, including fractured vertebrae. *See id.*  As Daniel lay on the ground in pain, with obviously severe injuries, one or more officers rolled Daniel over onto his stomach and handcuffed him behind his back.[2]  *See id.*

Plaintiffs allege that Detective Rawlins acted maliciously, without any proper reason and without provocation, committed the aforementioned actions involving Mr. Rockwell.  *See* Complaint (¶ 22). Plaintiffs further allege that Detective Rawlins' conduct was gross, reckless, and grossly negligent, as well as being wanton, extraordinary and outrageous and in disregard for Plaintiff Rockwell's health, safety, and welfare.  *See id.* (¶ 23).

The tasing by Detective Rawlins inflicted upon Plaintiff, Daniel L. Rockwell, was unjustified by any actions by Plaintiffs and constituted unreasonable and excessive use of force.  *See* Complaint (¶

---

29 to respond to the motion.

[2] The events comprising the alleged occurrence stated in this paragraph shall be referred to herein as the "Incident."

24).  Such excessive force by Detective Rawlins proximately caused significant legal injuries and/or damages to Mr. Rockwell.  *See id.*  (¶ 26).  Detective Rawlins' unlawful tasing of Mr. Rockwell was performed with malice, evil intent, and/or in deliberate disregard of Mr. Rockwell's federally protected rights, as would justify the imposition of punitive damages by the jury in this case.  *See id.* (¶ 25).

### B.    Summary Judgment Factual Record

Daniel L. Rockwell, as set forth in the Declaration of Daniel L. Rockwell, attached hereto as Exhibit A (the "Rockwell Declaration"),[3] pursuant to Rule 56 and 28 U.S.C. § 1746, testifies to the following relating to the Incident:

- On February 8, 2011, I was residing at my mother's home; a single-family house located at 4425 Wrenwood Avenue, Baltimore City, Maryland. At that time, I was serving home detention.

- On the morning of February 8, 2011, I became aware that one or more police officers were at the Wrenwood Avenue home. My immediate reaction was that if I were to be picked up by the police, I would go to jail. I was afraid to go to jail. I went up the stairs to the second floor of the house, and then climbed out one of the two side-front windows at the front of the house, onto the roof of the porch overhang. Copies of photographs of the house, attached hereto as Exhibits 1 and 2 show the main front window of the house (Exhibit 1) and also one of the two side-front windows, next to the front window (Exhibit 2).

- Defendant, Detective Clyde Rawlins then appeared in that window. Detective Rawlins stated to me (in substance), "Daniel, get off the roof." There were also

---

[3]  All exhibits hereto are adopted by reference herein as if set forth fully herein.

approximately three law enforcement officers (identified as Detective Richard Manning, School Police Officer Rodney Coffield, and Department of Juvenile Services Officer Leo Zilka) on the ground. The men on the ground were telling me to get off the roof and to go back inside the house. In response to Detective Rawlins and the law enforcement officers on the ground, I stated that I'm coming off the roof. Detective Rawlins was at the window. Complying with the orders of the law enforcement officers, I moved toward the window to re-enter the house through the window. Detective Rawlins shot me with a taser, which caused me to fall off the roof to the ground.

• While I was on the roof, I did not walk in an unusually rapid manner. I did not run back and forth repeatedly.

• While I was on the roof, I did not ignore any alleged order(s) by Detective Rawlins to expose my hands. Detective Rawlins did not make this alleged order. My hands were exposed.

• While I was on the roof, I was not armed, nor did I have anything in the waistband of my pants or underwear.

• While I was on the roof, I did <u>not</u> (a) reach for anything in my belt area, (b) put my hands in my pants, or (c) manipulate any object in that area (I had no object in that area).

• While I was on the roof, none of the law enforcement officers on the ground had any weapons drawn.

*See* Exhibit A, at 1-2.[4]

---

[4] Footnote 1, at page 5 of Detective Rawlins' summary judgment memorandum of law, suggests that Plaintiff Rockwell may not be competent to testify to matters in this case.  *See* ECF Doc. No. 67-1, at 5 n.1.  That argument is fatally flawed on any number of grounds.  *First*, Detective Rawlins, in his

4

In addition, Demetria R. Holden, as set forth in the Declaration of Demetria R. Holden, attached hereto as Exhibit B (the "Holden Declaration"), pursuant to Rule 56 and 28 U.S.C. § 1746, testifies to the following relating to the Incident:

•I am the mother of Daniel L. Rockwell.

•I know Defendant, Detective Clyde Rawlins from prior encounters that he has had with my son, Daniel L. Rockwell and me.

•At no time did I observe Detective Rawlins exhibit fear of Daniel.

---

summary judgment papers, does nothing to establish the suggested fact for summary judgment purposes, much less establish the matter through admissible evidence. *See* FED. R. CIV. P. 56(c). *Second*, relatedly, Defendant's suggestion is improperly speculative. As one federal District Court has concluded, in this context: "In an extraordinary argument, plaintiffs next question [defendant] Officer Spray's mental capacity to submit testimony in the declaration. Plaintiffs' attorney . . . claims in his own affidavit that [defendant] Spray told him that he was suffering from mental and emotional problems. The court will not strike an affidavit based on an attorney's hunch that the affiant does not have the capacity to submit admissible testimony in an affidavit." *Estate of O'Bryan v. Town of Sellersburg*, 02-cv-238, 2004 WL 1234215, *7 (S.D. Ind. May 20, 2004). *Third*, the U.S. Court of Appeals for the First Circuit has concluded that an argument going to a signatory's mental capacity requires competent medical testimony, distinctly lacking here. *See Morais v. Central Beverage Corp. Union*, 167 F.3d 709, 714-15 (1st Cir. 1999); *see also DeClue v. General Motors Corp.*, 99-cv-2229, 2000 WL 1472856, *2 (D. Kan. Aug. 22, 2000) (citing cases). *Fourth*, there is a complete failure of adequate proof, temporally. If the issue is whether a person is competent to testify, today, then that person's mental capacity several years ago does not answer that. Footnote 1 of Detective Rawlins' summary judgment memorandum cites, ultimately, two mental competency matters in the Circuit Court for Baltimore City; the electronic dockets for both cases are attached hereto as Exhibit D (Case No. 112038003) and Exhibit E (Case No. 121001062114), respectively, and these make clear that the disposition in both cases of not competent to stand trial occurred in August of 2012. One federal District Court has held that an affidavit going to the mental capacity of a witness must address the relevant time-frame. *See Michaud v. Crosby*, 03-cv-2657, 2006 WL 845162, *1 (M.D. Fla. March 30, 2006); *accord Longval v. United States*, 41 Fed.Cl. 291, 300-02 (1998). There is a complete failure of that requirement, here. *Fifth*, courts in the Fourth Circuit have specifically concluded that a determination of mental capacity in one legal context does *not* translate into the same (or similar) finding of mental capacity in another legal context. *See Prudential Ins. Co. of America v. Hamilton*, 12-cv-214, 2012 WL 5451039, *1-*2 (W.D.N.C. Nov. 7, 2012); *see also Hudnall v. Sellner*, 800 F.2d 377, 384-85 (4th Cir. 1986), *cert. denied sub nom. Sellner v. Panagoulis*, 479 U.S. 1069, 107 S.Ct. 960 (1987). So too here, an unexplained state criminal finding of several years ago, with no particulars established, does nothing to speak to Mr. Rockwell's presumptive legal capacity, today, to submit a declaration pursuant to Rule 56 and 28 U.S.C. § 1746 in a federal civil action.

•In fact, Detective Rawlins apparently felt comfortable enough around Daniel and me

to have, on prior occasions, made himself comfortable in our house; comfortable

enough to use our bathroom.

•On February 8, 2011, when Daniel was on the roof of the porch overhang, none of

the law enforcement officers on the ground that I observed appeared concerned that

Daniel was a danger to anyone. None of the law enforcement officers on the ground

that I observed had any weapons drawn, and these law enforcement officers were

laughing at Daniel.

*See* Exhibit B, at 1-2.

Furthermore, Plaintiffs' expert designation, including the designation of police and "use of

force" expert Robert W. Klotz, is attached hereto as Exhibit C.  Mr. Klotz's C.V. is appended as

Attachment A to Exhibit C and well establishes his credentials to opine on matters at issue in the

litigation.  Mr. Klotz's report states in part, "there are two completely different version[s] as to the

'tasing' of Rockwell by Rawlins.  The ultimate decision as to which version is accepted will be done

by those authorized to make such credibility findings."  *See* Exhibit C, Klotz, May 12, 2014 Report,

at 2.  Mr. Klotz's report further states:  "for nearly a year after this incident, the Baltimore City

Police Department maintained there was no reports of this incident.  The department then provided

several police reports but no investigative report package, that is usually prepared in the normal

course of business . . . ."  *Id.*

As to Mr. Klotz's opinions in the matter, Mr. Klotz primarily opines:  "The use of a ESD

[i.e., "electronic shock device" – a taser] under conditions as described by the Plaintiff would be a

violation of the national police standards.  No reasonabl[y] trained officer could believe this action

would be proper."  *See* Exhibit C, Klotz May 12, 2014 Report, at 2-3.  Mr. Klotz further opines:

"The failure by the Baltimore City Police Department to conduct [a] thorough, accurate investigation into the use of force and injury to Rockwell would be in violation of national police standards.  No reasonable police official or manager could believe this to be proper."  *See id*. at 3.

## II.      LEGAL STANDARDS

### A.      Legal Standard, Motion for Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment can be appropriate when, and only if, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the District Court's function is not to weigh the evidence or resolve the truth of genuinely disputed, material matters, but to determine whether there is a genuine dispute for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id*. at 248.  In undertaking this inquiry, a Court must view the facts and the reasonable inferences drawn therefrom in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

### B.      Court's March 11, 2014 Memorandum Opinion

In resolving, and denying in part, Defendants' prior motions to dismiss, this Court issued a Memorandum Opinion dated March 11, 2014.  *See Rockwell v. Mayor & City Council of Baltimore*, 13-cv-3049, 2014 WL 949859 (D. Md. March 11, 2014).  As to the claims of Daniel's mother, Plaintiff Holden, the Court ruled:  "[P]laintiffs have adequately stated claims for assault and battery against Detective Rawlins.  Moreover, Plaintiffs may recover for medical costs pertaining to Detective Rawlins' alleged excessive use of force under the state constitutional claims and the gross negligence claim," (*see* 2014 WL 949859, at *5), thus authorizing a well-pled claim by Plaintiff

Holden to recover Daniel's causally-related medical expenses.

With respect to Daniel's excessive force claims, this Court recognized that the Fourth Amendment applies to claims of police efforts to effectuate an arrest. *See* 2014 WL 949859, at *6 n.6. "Courts determine whether the force used to effectuate the arrest was excessive by examining whether the officer's 'actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Id*. at *6 (quoting *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865 (1989)).  This Court, further, rejected Detective Rawlins' affirmative defense of qualified immunity:  "Plaintiffs claims that Rawlins tased Rockwell, a mentally disabled minor, while standing on a second story roof, causing him 'to fall from the roof to the ground.'  Pls.' Compl. ¶ 21.  Per the allegations in the Complaint, Rockwell was on a second-story roof posing 'no danger' to Detective Rawlins before Rawlins tased Rockwell. *Id.* Rawlins's qualified immunity depends upon the factual questions surrounding Plaintiffs' Fourth Amendment claims . . . ." *Id.*

In its March 11, 2014 Memorandum Opinion, this Court upheld the following claims by Plaintiff(s) against Defendant Rawlins:  Count I (assault), Count II (battery), Count VII (gross negligence), Count XI (Article 26, Maryland Declaration of Rights), and Count XII (U.S. Const., Amend. IV; § 1983, § 1985, § 1986).

### III.    ARGUMENT

**A.      Defendant Rawlins is *not* Entitled to Summary Judgment
In his Favor on all Remaining Counts**

Pages 6 through 10 of Defendant Rawlins' summary judgment memorandum argue that Detective Rawlins is entitled to summary judgment under Rule 56, asserting a number of grounds, including that Detective Rawlins is entitled to judgment as a matter of law, that there are no relevant factual disputes, and that Defendant Rawlins has met his (steep) burden to establish qualified immunity (on a disputed factual record) as a matter of law.  Each of these arguments fail.

**1.      Detective Rawlins is *not* Entitled to
Judgment as a Matter of Law**

We start where the United States Supreme Court would start:  *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694 (1985).  *Garner* involved an unarmed, non-violent fleeing felon,[5] shot to death by the police.  *Garner* addressed application of a Tennessee statute that authorized deadly force against a fleeing suspect.  *Garner* held that to the extent the Tennessee statute authorized use of deadly force against an apparently unarmed, non-violent fleeing suspect, that statute (and such actions by the officer) violated the United States Constitution.   The U.S. Supreme Court applied the Fourth Amendment to the apprehension, and further concluded that "it is plain that reasonableness depends on not only when a seizure is made, but also how it is carried out." *Garner*, 471 U.S. at 8, 105 S.Ct. at 1699.  Several principles underscored the Court's holding.  "The intrusiveness of a seizure by means of deadly force is unmatched.  The suspect's fundamental interest in his own life need not be elaborated upon.  The use of deadly force also frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment." *Id.* at 9, 105 S.Ct. at 1700.  Further, the Supreme Court recognized that as both a constitutional and policy matter, "[t]he use of deadly force is a self-

---

[5]  It is significant to note that the facts of *Garner* differ from the instant case, where Mr. Rockwell

defeating way of apprehending a suspect and so setting the criminal justice mechanism in motion." *Id*. at 10, 105 S.Ct. at 1700.

Accordingly, in *Garner*, the U.S. Supreme Court held as follows.  "*The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable.  It is not better that all felony suspects die than that they escape.  Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.*"  *Garner*, 471 U.S. at 11, 105 S.Ct. at 1701 (emphasis added).  Thus, use of "deadly force" on an unapprehended suspect requires, constitutionally, the police *reasonably* suspect the threat of serious physical harm to the police or others by the suspect.  *See id*.

Detective Rawlins argues for a finding as a matter of law by this Court, but what the federal caselaw makes clear is that Defendant Detective Rawlins tasing Mr. Rockwell on an elevated, steeply-pitched roof (*see* Exhibit A, Exhibits 1 and 2 thereto) was, in fact, the use of deadly force,[6] thereby directly invoking the constitutional protections of *Garner*.  Further, *Garner* made an additional point directly relevant here.  *Garner* recognized that advancing technology means increasing dangerousness of police weapons; and as such deadliness, and risks involving suspect apprehension, increase, federal courts' interpretation of the Fourth Amendment must be dynamic to meet those changes.  *See Garner*, 471 U.S. at 14-15, 105 S.Ct. at 1703; *see also Kyllo v. United States*, 533 U.S. 27, 34, 121 S.Ct. 2038, 2043 (2001) (advances in technology not permitted to erode protections of Fourth Amendment).

---

was *complying* with police orders at the time he was tased, as further discussed, below.
[6]  Herein, all references to "deadly force" include a corresponding reference to near-deadly force.

Federal caselaw establishes that Defendant Detective Rawlins tasing Mr. Rockwell on an elevated, steeply-pitched roof was the use of deadly force. One U.S. Court of Appeals has explained the dangerousness, and intrusiveness, of a taser:

> A taser is an electric stun-gun. In dart mode, it uses metal-tipped "probes" to deliver an electric shock, causing temporary paralysis and intense pain . . . . [A] taser . . . intrudes upon the victim's physiological functions and physical integrity in a way that other non-lethal uses of force do not. Especially with the newer tasers, the nature and quality of their intrusion on the individual's Fourth Amendment interests is somewhat unique in that they render even the most pain tolerant individuals utterly limp . . . .

*Thomas v. Plummer*, 489 Fed.Appx. 116, 125 (6th Cir. 2012) (citations, quotation marks omitted; footnote omitted).[7] And although *Thomas* further notes that ordinarily a taser is an "intermediate or medium, though not insignificant, quantum of force" (*see id.*), other cases make clear that in certain circumstances, the use of a taser is deadly force in its substantial potential to cause serious bodily injury or death.[8]

The U.S. District Court's decision in *Snauer v. City of Springfield*, 09-cv-6277, 2010 WL 4875784 (D. Ore. Oct. 1, 2010), was issued before the Incident in this case. The fleeing suspect in *Snauer* was tased as he reached the top of a six- or seven-foot high fence. *See* 2010 WL 4875784, at *2. The tasing temporarily paralyzed the suspect, and he suffered multiple spinal fractures, after falling. *See id.* The District Court rejected defendants' argument that use of a taser in these circumstances was an "intermediate" use of force. *See id.* at *4. "The definition of 'deadly force'

---

[7] *See also Henry v. Purnell*, 652 F.3d 524, 539-41 (4th Cir.) (*en banc*) (Davis, J., concurring), *cert. denied*, ___ U.S. ___, 132 S.Ct. 781 (2011).

[8] The Fourth Amendment provides a right to be free from the use of excessive force by police officers in effecting an arrest or other seizure. The Fourth Amendment bars an unreasonable seizure, prohibiting police officers from using excessive force against a non-detained citizen. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865 (1989). Whether an officer has used excessive force is judged by a standard of objective reasonableness. *Id.* at 396-397. This court is not required to consider the officer's motives, intentions or tendencies, and instead determine "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying a particular

has been well established in this circuit since the [Ninth Circuit] *en banc* holding . . . joined sister circuits in fashioning a deadly force test that looked to whether the force employed 'creates a substantial risk of causing death *or serious bodily injury.*' (emphasis supplied). Here, [defendant] Sether was trained in the use of a taser and knew well that a tasered suspect becomes temporarily paralyzed.   The type of taser used by Sether deploys dart probes which cause neuromuscular incapacitation . . . ." *Id*. at *5 (citation omitted).   The District Court took notice: "it is obvious that the greater the height, the greater the danger." *Id*.   Hence, the Court held, "*[i]t does not take a panel of judges to alert a reasonable police officer that causing a paralyzed man to tumble head first onto the ground from a platform six to seven feet above the ground 'creates a substantial risk of causing death or serious bodily injury*.'" *Id*. (emphasis added).

A civil case in this Circuit, *Cook v. Riley*, 11-cv-24, 2012 WL 2239743 (M.D.N.C. June 15, 2012), arose from the police tasing a suspect in a tree, injured when he fell out of the tree.   The Court recognized that a "TASER inflicts a painful and frightening blow, which temporarily paralyzes the large muscles of the body, rendering the victim helpless." *See* 2012 WL 2239743, at *10.   The District Court also recognized that the suspect's severe injuries from the fall from the tree were a factor in whether the force used was reasonable. *See id*. at *11.   The Court found, with the suspect in an elevated position, the use of force by tasing him was substantial: "A factfinder could conclude that a reasonable officer would foresee that utilizing a TASER under such circumstances could cause the targeted individual to fall and thereby to suffer serious harm . . . ." *Id*. at *12.

In *Negron v. New York*, 976 F.Supp.2d 360 (E.D.N.Y. 2013), the District Court recognized the deadly force and/or substantial force effect of using a taser in certain circumstances: "of even greater significance, the risk of serious injury posed by a taser is far greater and the intrusion on an

use of force." *Id*.

individual's interests is substantially more severe if the target is in a precarious position. For example, the Sixth Circuit found it unreasonable to taser a suspect who was 'in a prone position in a muddy swamp' and at obvious risk of drowning." *Id.* at 367-68 (quoting *Landis v. Baker,* 297 Fed.Appx. 453, 464 (6th Cir. 2008)). "[W]hen a taser is deployed without warning, a person cannot anticipate or prepare for its effects." *Id.* at 367. Recognizing these dangers, the District Court rejected defendants' summary judgment motion, involving a suspect being tased on a fire escape, ten feet above the ground: "Given the height at which [suspect] Morales was standing and the precarious nature of his perch, even the significant risk of the fatal result that ensued could reasonably have been foreseen." *Id.* at 368. Other federal courts have likewise concluded that tasing a suspect from an elevated or otherwise precarious position is the use of deadly force (and/or at least substantial force that states a viable claim), given the dangers presented. *See Baker v. Union Township*, 12-cv-112, 2013 WL 4502736, *2, *8 (S.D. Ohio Aug. 22, 2013); *Peabody v. Perry Township*, 10-cv-1078, 2013 WL 1327026, *5 (S.D. Ohio March 29, 2013); *Brown v. Burghart*, 10-cv-3374, 2012 WL 1900603, *8-*9 & n.9 (E.D. Pa. May 25, 2012).

As the *Cook* decision demonstrates, these holdings are fully in accord with Supreme Court and Fourth Circuit precedent. *Jones v. Buchanan*, 325 F.3d 520 (4th Cir. 2003), reiterated the standard to apply when a federal court addresses a civil defendant seeking to prove a qualified immunity affirmative defense. The first step is whether the facts alleged, *taken in the light most favorable to the party asserting the injury*, establish a constitutional violation. *See Jones*, 325 F.3d at 526. "The next, sequential step is to ask whether the right was 'clearly established' at the time of the events at issue." *Id*. In *Jones,* the Fourth Circuit identifies the following four primary factors in making the analysis: "Those facts and circumstances include 'the severity of the crime at issue,' whether the 'suspect poses an immediate threat to the safety of the officers or others,' and whether

the suspect 'is actively resisting arrest or attempting to evade arrest by flight . . . .' The extent of the plaintiff's injury is also a relevant consideration."[9] *See id.* at 527.

Plaintiffs address the relevant considerations, in turn:

### a.    The Severity of the Crime at Issue

At the time of the Incident, the police, including Detective Rawlins, were serving a juvenile warrant for Mr. Rockwell's violation of community detention.   *See* ECF Doc. No. 67-3, at 1 (Manning statement).  To the extent it is proper "to go behind" that charge, Mr. Rockwell allegedly severed his home detention monitoring device.  Although the police clearly had a right to *reasonably* apprehend Mr. Rockwell, this is not a serious or violent crime.  The fact that this was a "juvenile" warrant further confirms this.[10]

### b.    Threat of the Suspect

Part III.A.2, *infra*, is adopted by reference as if set forth fully in this part.  As is discussed in greater detail, below, in part III.A.2, the primary area of factual dispute by the parties is the actions by Daniel Rockwell (and the officers) when he was on the roof of the porch overhang during the Incident.  Detective Rawlins' summary judgment papers argue that the police officers' (collective) statements indicate an object in Mr. Rockwell's waistband or belt area, combined with movement of Mr. Rockwell's hand(s) toward that allegedly perceived object (or at least the failure of Mr. Rockwell to expose his hands).

---

[9]  Defendant's memorandum recognizes the applicability of the *Graham v. Connor* factors to the Fourth Amendment excessive force inquiry.  *See* ECF Doc. No. 67-1, at 7.

[10]  The crime as to which the "severity" is to be considered is a juvenile warrant for violation of community detention.  Defendant's summary judgment papers make reference to a prior firearms charge.  Again, that is <u>not</u> the crime for which Mr. Rockwell was being apprehended at the time of the Incident.  To the extent the prior firearms charge is considered, it is significant to note, for example, that unlawful possession of a short-barreled shotgun is not considered a "violent felony" for purposes of the Armed Career Criminal Act ("ACCA").  *See United States v. Miller*, 721 F.3d 435, 439-40 (7th Cir. 2013); *see also United States v. Amos*, 501 F.3d 524, 527, 530 (6th Cir. 2007).

Several points bear emphasis in this part III.A.1.b.  No weapon (or similar object) was ever found in Mr. Rockwell's waistband area.  That fact, *standing alone*, raises serious questions as to the officers' credibility (including Detective Rawlins' credibility), properly entitling Mr. Rockwell to a trial in this case.  Also, as discussed, below, the officers' actions belie their collaborative, post-Incident claim that they considered Daniel Rockwell to present a serious safety threat during the Incident.  There were four officers present at the Incident – *none of the four police had their handguns drawn during the Incident*.  *See* Exhibit B, at 1-2.  A jury is entitled to find that a police officer, claiming, after the fact, that a suspect was a serious threat, but not having drawn his service firearm to protect himself, is not credible.  *See Jones*, 325 F.3d at 529 (police treatment of suspect immediately prior to incident speaks to police's perceptions of suspect's danger); *Sawyer v. Asbury*, 537 Fed.Appx. 283, 294-95 (4th Cir. 2013) (same).[11]

Furthermore, under Fourth Circuit precedent, vague references to a suspect's "physical movement" do *not* establish a serious threat by the suspect.  *See Jones*, 325 F.3d at 530 ("Deputy Keller also cannot justify his actions based on Jones's slight physical movement—simply *beginning to stand up* 'just a little bit' while in handcuffs . . . .").  Similarly, the Fourth Circuit's holding in *Bailey v. Kennedy*, 349 F.3d 731, 740-41 (4th Cir. 2003), establishes that, in an excessive force context, a federal court should not give credence to a police officer's conclusory, unsupported averments; similar to here, where Detective Rawlins and the other officers offer vague, contradictory, self-serving, and – most importantly – bare conclusory statements, without supporting

---

[11]  *Cf. also Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1091 (9th Cir. 2013) ("Defendants also urge us to consider Jack's then-unlocated gun as a basis for the officers' belief that Blondin posed a threat. As the district court observed, the officers' purported fear that Blondin might have a gun was 'based on nothing more than the reality that any civilian could be armed, speculation that fails to distinguish [Blondin] from any bystander at a crime scene.'"), *cert. denied*, ___ U.S. ___, 134 S.Ct. 1292 (2014).

facts to make such statements credible.[12]  "[A] suspect's noncompliance, without more, is not a basis for the use of force."  *Gray v. Frederick County*, 551 Fed.Appx. 666, 673 (4th Cir. 2014).

The Fourth Circuit's holding in *Orem v. Rephann*, 523 F.3d 442, 446-47 (4th Cir. 2008),[13] confirms the principle that a reviewing federal court should not deferentially accept defendant police officers' self-serving, after-the-fact testimony when an equally plausible, or more plausible, explanation of the situation exists.  Like the officers' explanations in *Orem*, the support for Detective Rawlins' use of deadly force in this case is "tenuous at best."  *See Orem*, 523 F.3d at 447.

### c.   Any Resistance by the Suspect

Although Defendant Rawlins points to Daniel Rockwell's flight to the roof of the second floor porch overhang, this Court must properly hone in on the most relevant temporal and spatial foci presented.  Controlling Fourth Circuit precedent establishes that analysis of excessive force cases is dynamic and that relevant frames of analysis are often in *seconds*.  Generally, the United States Court of Appeals for the Seven Circuit captured this principle when it held:  "Force is reasonable only when exercised in proportion to the threat posed, . . . and as the threat changes, so too should the degree of force . . . .  Accordingly, a jury might reasonably conclude that the circumstances of the encounter here reduced the need for force as the situation progressed."  *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010).

Thus, in *Valladares v. Cordero*, 552 F.3d 384, 390 (4th Cir. 2009), the Fourth Circuit recognized a suspect's "point of surrender," which establishes a demarcation point in the excessive

---

[12]  *Cf. Brown v. City of Golden Valley*, 574 F.3d 491, 497 (8th Cir. 2009) ("As for [officer] Zarrett's argument that the two glass tumblers at [suspect] Sandra's feet could be used as weapons, his deposition testimony that 'It's not something I would rule out.  It's something easily accessible,' is hardly the description of an officer in fear of being physically attacked.").

[13]  *Orem* is a Fourteenth Amendment excessive force case.  The Fourth Circuit has made clear that its principles apply, likewise, to a Fourth Amendment excessive force situation.  *See Sawyer*, 537 Fed.Appx. at 293 n.13.

force analysis.  The "point of surrender" is a game-changer, which can render excessive force that if used, only seconds before, might have been reasonable.  "We . . . hold that force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated."  *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005); *accord Correa v. Simone*, 528 Fed.Appx. 531, 534 (6th Cir. 2013).  The facts of *Waterman* doubly confirm this, as certain gunshots fired were held protected by qualified immunity, but other gunshots, fired only a second or two later (once the vehicle (and, thus, the danger to the officers) had passed by) were held *not* to enjoy legal immunity.  *See Waterman*, 393 F.3d at 482.  Crucially, as well, the Fourth Circuit also holds in *Valladares* that a suspect ceasing to resist arrest "satisfies the last prong of the *Graham* analysis (whether he was actively resisting arrest)."  *Valladares*, 552 F.3d at 390-91.

The Fourth Circuit precedent of *Valladares* and *Waterman* establish that the relevant temporal and spatial foci of whether Daniel Rockwell was resisting arrest is on the roof of the porch overhang, seconds before he was tased.  *See also Meyers v. Baltimore County*, 713 F.3d 723, 733 (4th Cir. 2013) (quoting *Waterman*).  And, in fact, as even the officers' accounts make clear, Daniel was *not resisting*, but *complying* with the orders of Detective Rawlins and the other officers.  Exhibit A hereto, the Declaration of Daniel L. Rockwell, makes clear that at the time of the tasing, and in the seconds immediately prior, Daniel was complying with Detective Rawlins' (and the other officers') directive to come off the roof and/or go back inside the house.  *See* Exhibit A, at 1-2.  Likewise, the officers concede that they were ordering Daniel to get off the roof and/or return inside the Holden/Rockwell home.  *See*, *e.g.*, ECF Doc. No. 67-2 (Rawlins statement), at 2; No. 67-3 (Manning statement), at 1.

The subject is controlled by the decision of the U.S. Court of Appeals for the Fourth Circuit in *Schultz v. Braga*, 455 F.3d 470 (4th Cir. 2006).  The factual background of *Schultz* is detailed, and

intense, but essentially Mr. Schultz was passenger in a vehicle stopped by the FBI; FBI agents surrounded the vehicle, shouting orders at Schultz and the vehicle driver; Mr. Schultz complied with the oral directive of one FBI agent, and as he did so, another FBI agent shot Schultz in the face because the latter agent (supposedly) considered Schultz's movements to be threatening. *Schultz* holds, at a minimum, that it is unlawful to use deadly force on a suspect when that suspect is complying with police instructions. *See id*. at 474-79. That is precisely what occurred, here. Detective Rawlins and the other officers repeatedly directed Daniel Rockwell to exit the roof and re-enter the house. Mr. Rockwell complied with the directive, and while doing so, Daniel Rockwell was tased, thereby suffering serious bodily injury. Under *Schultz*, Detective Rawlins actions' violated the Fourth Amendment.[14]

### d.    Extent of Suspect's Injuries

As a result of the tasing Incident, Daniel Rockwell fell from the roof of the porch overhang to the ground, suffering severe bodily injuries, including fractured vertebrae. This level of serious bodily injury is similar to, if not greater than, the substantial bodily injuries suffered by the suspect in *Jones*, wherein the Fourth Circuit reversed summary judgment, holding a trial was proper on the issue of excessive police force. *See Jones*, 325 F.3d at 530-31. Likewise, the serious bodily injuries suffered by Daniel Rockwell in this case are similar to (or analogous to) serious bodily injuries suffered by victims in other taser cases, wherein it was held that the suspect / plaintiff stated a viable excessive force claim. *See Snauer v. City of Springfield*, 09-cv-6277, 2010 WL 4875784, *2 (D. Ore. Oct. 1, 2010) (multiple spinal fractures); *Peabody v. Perry Township*, 10-cv-1078, 2013 WL 1327026, *1 (S.D. Ohio March 29, 2013) (serious head injuries); *see also Bailey*, 349 F.3d at 744.

---

[14] *See Schultz*, 455 F.3d at 477 ("'Where [a] suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.'") (quoting *Garner*, 471 U.S. at 11, 105 S.Ct. 1694).

e.       **Other Considerations**

The four *Jones* factors are recurrent, but not exhaustive, in determining the "totality of the circumstances" involving a Fourth Amendment excessive force claim.  The Ninth Circuit's decision in *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001), *cert. denied*, 536 U.S. 958, 122 S.Ct. 2660 (2002), identified two additional factors in the *Jones/Graham* analysis, both of which are relevant, and important, here.  Detective Rawlins' own summary judgment submissions recognize that Daniel Rockwell was a person, at the time of the Incident, who was (or may have been) suffering from mental or emotional difficulties and/or limitations, and this is a factor to be taken into account by the trier of fact in determining the excessive force question.  "[W]e emphasize that where it is or should be apparent to the officers that the individual involved is emotionally disturbed, that is a factor that must be considered in determining, under *Graham,* the reasonableness of the force employed."  *Deorle*, 272 F.3d at 1283.  *Accord Martin v. Broadview Heights*, 712 F.3d 951, 962 (6th Cir. 2013); *Griffith v. Coburn*, 473 F.3d 650, 658 (6th Cir. 2007); *Khansari v. Houston*, ___ F.Supp.2d ___, 2014 WL 1401857, *6 (S.D. Tex. April 9, 2014); *Negron*, 976 F.Supp.2d at 369; *Cardall v. Thompson*, 845 F.Supp.2d 1182, 1192 (D. Utah 2012).  There is no record evidence that this factor was properly considered, or addressed, by Detective Rawlins or the other officers in this case.[15]

In *Deorle*, the Ninth Circuit also recognizes the critical importance of an effective warning in the excessive force calculus.  "[W]e . . . determine that such warnings should be given, when feasible, if the use of force may result in serious injury, and that the giving of a warning or the failure to do so is a factor to be considered in applying the *Graham* balancing test."  *Deorle*, 272

---

[15]  Detective Rawlins says the following in his statement:  "this [officer] . . . has arrested Mr. Rockwell five times since November 2010 to date, and each time his behavior became increasingly wanton, reckless, and unpredictable . . ."  *See* ECF Doc. No. 67-2, at 1.  First of all, that statement is utterly conclusory and lacks probative value.  Assuming, however, some element of truth behind what Detective Rawlins is asserting, there is no record showing that Defendant Rawlins or the other

F.3d at 1284.  Here, no warning was given by Detective Rawlins to Daniel Rockwell, either as to being tased (specifically) or the use of deadly force (generally).  Federal courts find the failure of an effective warning as a primary factor, and even the determining factor, in police excessive force decisions.  *See, e.g., Gravelet-Blondin*, 728 F.3d at 1092; *Mattos v. Agarano*, 661 F.3d 433, 451 (9th Cir. 2011) (*en banc*), *cert. denied sub nom., Daman v. Brooks*, ___ U.S. ___, 132 S.Ct. 2681 (2012); *Cardall*, 845 F.Supp.2d at 1192.[16]

For these reasons, the summary judgment record before this Court does *not* establish that Defendant Detective Rawlins is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).[17] In fact, if there is any finding to be made *as a matter of law*, it is that Detective Rawlins' tasing of Daniel Rockwell during the Incident constituted unlawfully excessive force.[18]

Defendant Rawlins relies, principally, upon the case of *McKenney v. Harrison*, 635 F.3d 354 (8th Cir. 2011), in his summary judgment motion papers.  The *McKenney* case is clearly distinguishable from the case at bar, in that in *McKenney*, the police officer tased the suspect as he

---

officers took this into account, or effectively addressed the factor, on the Incident date.

[16] Additionally, courts recognize that "[a] desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury.  There must be other significant circumstances that warrant the use of such a degree of force at the time it is used."  *Deorle*, 272 F.3d at 1281.  *Accord People v. Smith*, 95 A.D.3d 21, 26-27, 940 N.Y.S.2d 373, 378-79 (N.Y. Ct. App. 2012).

[17]  In the case at bar, at this dispositive motions stage of the proceedings, Plaintiffs have overcome the "first prong" of the qualified immunity test; that being Defendant Rawlins' conduct violated Plaintiff Rockwell's constitutional right to be free from the use of excessive force.  As discussed, Defendant, Rawlins, by shooting Plaintiff Rockwell, a mentally-challenged minor, with a taser while Plaintiff Rockwell was outside of his bedroom window, standing on a narrow second story roof/ledge, at an elevated position and not actively fleeing, thereby caused Daniel to fall from the roof to the ground, fracturing his vertebrae.  Excessive force was used, thereby violating Mr. Rockwell's Fourth Amendment rights.

[18]  As addressed by prior briefing and decision, public officials are not immune from liability for violations of the Maryland Declaration of Rights.  *See Clea v. City of Baltimore*, 312 Md. 662, 684, 541 A.2d 1303, 1314 (1988).  Furthermore, public officials are not immune from liability for intentional common law tort claims or acts committed with actual malice.  *See Thomas v. City of*

was actively fleeing and while he was still in the dwelling.  The suspect in *McKenney*, then

continued fleeing out the window.  In the case at bar, Plaintiff Rockwell was not inside the dwelling;

rather, he was outside of his bedroom window, standing on the narrow second story roof/ledge, at an

elevated position, not actively fleeing, when Defendant Rawlins tased him, causing him to fall to the

ground and fracture his vertebrae.

     *McKenney*, then, is plainly distinguishable on at least the following grounds.  *First*, in

*McKenney* the suspect was clearly warned that non-compliance would result in being tased.  *See*

*McKenney*, 635 F.3d at 357 ("[Officer] Pollreis, who had removed her Taser from its holster, told

[suspect] Barnes not to try anything and said 'you don't want to be tased.'").  As noted above, the

absence of fair warning is a significant factor in a determination of excessive force.  *Second*, in

*McKenney*:  "While Barnes was putting on his second shoe, he suddenly lunged toward the

window."  *Id*.[19]  This is distinguishable, as a clear effort at escape; whereas in this case, Daniel

Rockwell was cabined on the roof of the overhang, surrounded by at least four officers, and Daniel

was, in fact, complying with police directives to move back toward the house at the time he was

tased.  *Third*, perhaps most critically, *McKenney* concluded from its facts:  "a reasonable officer,

knowing that a Taser is designed to incapacitate instantly, could have believed that the force would

incapacitate Barnes before he reached the window, while he was not in an 'elevated position' and

likely to fall."  *Id*. at 360.  That is just simply *not* this case, where the <u>only</u> reasonable expectation

that an objective officer in Detective Rawlins' position could have had was that Daniel Rockwell

was going to seize-up after being tased, fall off the steeply-pitched roof, and very likely suffer death

or grave personal injuries.  *Fourth*, the court states in *McKenney*:  "Accepting . . .  that the mental

---

*Annapolis*, 113 Md.App. 440, 456, 668 A.2d 448, 455-56 (1997); *Cox v. Prince George's County*,
296 Md. 162, 169, 460 A.2d 1038, 1041 (1983).

[19]  *Accord id*. at 360 ("[B]arnes made a sudden movement toward the window, which the officers

capacity of the citizen bears on the reasonableness of the officer's conduct, the record does not support a finding that these officers knew that [suspect] Barnes was mentally retarded." *Id.* This is plainly different from the present case, where Defendant Rawlins, himself, professes substantial past involvement with Daniel Rockwell. *See* ECF Doc. No. 67-2, at 1 ("this [officer] . . . has arrested Mr. Rockwell five times since November 2010 to date, and each time his behavior became increasingly . . . unpredictable . . ."); *see also* Exhibit B (Holden Declaration, describing Detective Rawlins' prior interaction with Daniel Rockwell). Accordingly, *McKenney* is so disparate from the facts of this case as to be of no significant persuasiveness.

### 2.    Genuine Factual Disputes Preclude Summary Judgment

Genuine factual disputes preclude summary judgment in this case. A primary issue for trial determination is whether Detective Rawlins reasonably feared for his safety during the Incident. If he did not, then Defendant Rawlins' use of deadly force on Daniel Rockwell was illegal as a matter of law. *See Garner*, 471 U.S. at 11, 105 S.Ct. at 1701. This area is plainly contested by the parties.[20] At the time of the Incident, Detective Rawlins apparently trapped himself just inside the side-front window of the home, apparently due to his size. Rawlins asserts that he ordered Daniel Rockwell to expose his hands (*see* ECF Doc. No. 67-2, at 2); Rockwell, under penalty of perjury, contests this, affirming that Rawlins did not say that. *See* Exhibit A, at 2. Rawlins asserts that Rockwell had an object in his waistband; Rockwell stating in his declaration that when he was on the roof, he was not armed, nor did he have anything in the waistband of his pants or underwear. *Cf.* ECF Doc. No. 67-2, at 3; Exhibit A, at 2. Rawlins asserts that Rockwell manipulated an object;

---

reasonably interpreted as an active attempt to evade arrest by flight . . . .").

[20] As Detective Rawlins acknowledges in his summary judgment memorandum: "[With] the arrest warrant, . . . [that] leav[es] only the question of whether the force used in effecting the arrest was excessive." *See* ECF Doc. No. 67-1, at 6. Defendant Rawlins admits the question to be answered is

Rockwell denies that, stating in his declaration that while he was on the roof, he did not manipulate any object in the waistband area (and he did not have an object in that area).  *Cf. id.*  Rawlins asserts Rockwell reached his hands toward his waistband; Rockwell denies that, stating in his declaration that while he was on the roof, he did not reach for anything in his belt area and that he did not put his hands in his pants.  *Cf. id.*  Rockwell also states in his declaration that he did not pace the roof in an unusually rapid manner, contradicting the officers' accounts of the incident.  *Cf. id.*

The foregoing is the crux of this case, and these genuine disputes of material fact can properly be resolved only by a jury, after trial.

There are additional factual disputes for the jury to consider.  The officers present a version whereby they assert a pre-Incident concern for their safety involving Daniel Rockwell.  *See, e.g.*, ECF Doc. No. 67-2, at 1-3.  Plaintiffs dispute that, Plaintiff Holden stating in her declaration that Detective Rawlins felt comfortable in her home, that Rawlins did not exhibit any fear of Daniel, and also that the three officers on the ground were laughing at Daniel during the Incident.  *See* Exhibit B, at 1-2.

No weapon (or similar object) was ever found in Mr. Rockwell's waistband area (or on his person otherwise).  That fact, *standing alone*, raises serious questions as to the officers' credibility (including Detective Rawlins' credibility), properly entitling Mr. Rockwell to a trial in this case.  Furthermore, not one of the officers had their guns drawn during the Incident.  *See* Exhibit A, at 2; Exhibit B, at 2.  A jury is entitled to find that a police officer, claiming, after the fact, that a suspect was a serious threat, but not having drawn his service firearm to protect himself, is not credible.  *See Jones*, 325 F.3d at 529 (police treatment of suspect immediately prior to incident speaks to police's perceptions of suspect's danger); *Sawyer v. Asbury*, 537 Fed.Appx. at 294-95 (same).  Moreover,

---

whether the "physical force was reasonably necessary to effect the arrest."  *See id.*

23

Rawlins admitted to a significant prior relationship with Rockwell.  *See* ECF Doc. No. 67-2, at 1-3.

There are significant questions, for jury resolution, as to what Rawlins' knew of Rockwell's mental

and emotional capacity just prior to the Incident and the extent to which that was accounted for (if at

all) by Rawlins prior to and/or during the Incident.

It is the jury's function to resolve these and other subsidiary factual disputes.  In addition to

all of that, once the jury determines what actually occurred, it is the jury's function, likewise, to

draw reasonable inferences from the determined facts.

Similarly, only the jury can weigh "adverse inferences" properly drawn against Detective

Rawlins.  As part of Plaintiffs' expert designation, Mr. Klotz's report states: "for nearly a year after

this incident, the Baltimore City Police Department maintained there was no reports of this incident.

The department then provided several police reports but no investigative report package, that is

usually prepared in the normal course of business . . . ."  *See* Exhibit C, Klotz May 12, 2014 Report,

at 2.  As to Mr. Klotz's opinions in the matter, Mr. Klotz opines:  "The failure by the Baltimore City

Police Department to conduct [a] thorough, accurate investigation into the use of force and injury to

Rockwell would be in violation of national police standards.  No reasonable police official or

manager could believe this to be proper."  *See id.* at 3.  The jury is properly entitled to draw an

adverse inference against Defendant Rawlins based upon this type of evidentiary concealment /

spoliation,[21] and such a determination is for the trier of fact.  As another example, if the jury

disbelieves Detective Rawlins as to one part of his testimony, the jury is free to disbelieve all of his

testimony,[22] and only the trier of fact can make that determination.

---

[21]  *See First Mariner Bank v. Resolution Law Group*, 12-cv-1133, 2013 WL 579381, *10, *13-*14
(D. Md. Oct. 24, 2013); *see also Manganiello v. City of New York*, 612 F.3d 149, 166-67 (2nd Cir.
2010); *Residential Funding Corp. v. DeGeorge Fin. Group*, 306 F.3d 99, 107 (2nd Cir. 2002);
*Stanphill v. Health Care Service Corp.*, 627 F.Supp.2d 1244, 1250-51 (W.D. Okla. 2008).
[22]  *See Estate of O'Bryan v. Town of Sellersburg*, 02-cv-238, 2004 WL 1234215, *5 n.4 (S.D. Ind.

In the recent decision of *Tolan v. Cotton*, ___ U.S. ___, 134 S.Ct. 1861 (May 5, 2014), the United States Supreme Court issued a terse opinion that did not focus upon breaking new ground, but rather sought to remind the federal Courts that Rule 56 does not properly allow District Courts to resolve factual disputes in the qualified immunity context.   "[U]nder either [the "constitutional violation" or "clearly established"] prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Id.* at 1866.   *Tolan* further emphasized, "[t]he witnesses on both sides come to this case with their own perceptions, recollections, and even potential biases.   It is in part for that reason that genuine disputes are generally resolved by juries in our adversarial system." *Id.* at 1868.   Moreover, *Tolan* reiterates that a party's own testimony, as to his or her own actions, standing alone, creates a factual dispute that defeats summary judgment. *See id.* at 1867.

Fourth Circuit precedent is likewise clear that in qualified immunity cases, where key factual matters are genuinely and vigorously contested, resolution of those issues is for the jury; summary judgment is not proper. *See Hayes v. City of Seat Pleasant*, 469 Fed.Appx. 169, 173-74 (4th Cir. 2012); *Housley v. Holquist*, 879 F.Supp.2d 472, 481 (D. Md. 2011); *Dent v. Montgomery County*, 745 F.Supp.2d 648, 657-58 (D. Md. 2010); *Walters v. Prince George's County*, 08-cv-711, 2010 WL 2858442, *8 (D. Md. July 19, 2010).   Even on an issue as seemingly basic as what Daniel Rockwell was doing with his hands at the time just prior to being tased, such a genuine dispute, standing alone, defeats summary judgment. *See, e.g., Cook v. Riley*, 11-cv-24, 2012 WL 2239743, *10 (M.D.N.C. June 15, 2012).[23]

---

May 20, 2004).

[23] Other federal court decisions make clear that summary judgment is not properly entered in a case such as this, with material issues genuinely disputed by the parties. *See Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 758-59 (10th Cir. 2013); *Fils v. City of Aventura*, 647 F.3d 1272, 1287-88 (11th Cir. 2011); *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862-63 (7th Cir. 2010); *Baker v. Union Township*, 12-cv-112, 2013 WL 4502736, *8 (S.D. Ohio Aug. 22, 2013); *Cardall v. Thompson*, 845 F.Supp.2d 1182, 1192 (D. Utah 2012); *Jackson v. City of Gahanna*, 752 F.Supp.2d 830, 841 (S.D.

In this case, factual disputes preclude entry of summary judgment.[24]

### 3.    Plaintiffs' Allegations of Excessive Force Violated

---

Ohio 2010); *Estate of O'Bryan*, 2004 WL 1234215, at *11-*13.

[24]   Page 5 of Detective Rawlins' summary judgment memorandum states:  "On April 24, 2014, Defendant Detective Rawlins served Plaintiffs with Interrogatories . . . . [A]t the close of discovery, the Plaintiffs have failed to respond to Defendant Rawluk's requests . . . .  Fed. Rule Civ. Pro. 37(c)(1) . . . states: [rule quoted in part] . . . .  The Plaintiffs' failure to respond to discovery or dispute the accuracy of the reports written by [the four officers, including Defendant Rawlins] was not substantially justified or harmless, and therefore the information provided in those reports is undisputed."  *See* ECF Doc. No. 67-1, at 5.  Rule 37(c)(1) has no application in the context of Plaintiffs' summary judgment opposition, here.  Rule 37(c)(1), by its explicit terms, is limited to disclosures "required by Rule 26(a) or (e)."  Rule 26(a) is comprised of provisions (a)(1), (a)(2), and (a)(3).  Rule 26(a)(1) initial disclosures were not required in this case, by Order of Court.  *See* ECF Doc. No. 57, at 2.  Rule 26(a)(2) disclosures involve expert disclosure, which Plaintiffs in fact made, such disclosures being attached hereto as Exhibit C.  Rule 26(a)(3) involves pre-trial disclosure, which are not yet required to be made, with no trial date set, under the plain terms of the rule.  Rule 26(e) covers supplementation, only.  Defendant Rawlins makes no claim that Plaintiffs failed to supplement a previously-made discovery response.  No showing has been made that Rule 26(a) or 26(e) has been violated.  Accordingly, Rule 37(c)(1) has no application.

Beyond that, Detective Rawlins fails in any suggestion that even the spirit of Rule 37(c)(1) has been violated.  The Rule covers disclosure of witness identities and expert opinions.  Expert disclosure has been made.  As stated, this action is exempted from Rule 26(a)(1) disclosures.  In opposing Detective Rawlins' summary judgment papers, Plaintiffs rely upon the following:  the declaration of Plaintiff Rockwell, the declaration of Plaintiff Holden, the expert report submitted by Mr. Klotz, and any materials submitted by Rawlins with his summary judgment papers.  The purpose of Rule 26(a)(1) witness identification is to allow an adverse party to conduct witness deposition discovery, if the party wishes to do so.  *See Nance v. Ricoh Electronics, Inc.*, 381 Fed.Appx. 919, 923 (11th Cir. 2010).  Correspondingly, the primary factor in determining a Rule 37(c)(1) sanction is the "surprise" suffered by an adverse party as a result of a failure to disclose.  *See EEOC v. Thompson Contracting*, 499 Fed.Appx. 275, 280 & n.4 (4th Cir. 2012).  Here, there was no rules violation, but there was also no "surprise" to Defendant, as any fair reading of the Complaint would have made clear that parties Daniel Rockwell and Demetria Holden were witnesses with personal knowledge on matters at issue in the litigation.  Defendant could have, but chose not to, depose one or both Plaintiffs.  As the Fourth Circuit emphasized in this type of situation, Defendant "can show no prejudice here."  *CBRE Realty Finance TRS, LLC v. McCormick*, 414 Fed.Appx. 547, 550 (4th Cir. 2011).  Nor is there any showing that the Rockwell and Holden summary judgment-generated declarations were required to have been produced during the discovery period, *as not even in existence yet.  See In re Iron Workers Local 25 Pension Fund*, 04-cv-40243, 2011 WL 1256657, *7 (E.D. Mich. March 31, 2011).  By Defendant's argument, quoted above, Defendant appears to be attempting to make an improper, belated discovery motion, outside the discovery context.  Such an attempt was flatly rejected, in very similar circumstances, by the federal District Court in *Wheeler v. Olympia Sports Center, Inc.*, 03-cv-265, 2004 WL 2287759, *1-*3 (D. Me. Oct. 12, 2004).  *Accord Food Lion v. McNeill*, 393 Md. 715, 735, 904 A.2d 464, 476 (2006).  Rawlins' assertions on this point have zero merit.  Plaintiffs expect to serve written discovery responses shortly.

**"Clearly Established" Fourth Amendment Rights**

Page 10 of Detective Rawlins' summary judgment memorandum states, "[t]he case law regarding the use of tasers is nascent . . . . At a minimum, a reasonable officer could believe that the use of a taser to apprehend a fleeing misdemeanant is permissible under the Fourth Amendment." So, Rawlins argues that Rockwell's right not to suffer excessive force (i.e., the tasing, alleged) was not "clearly established" at the time of the Incident. That is wrong. That is not the law.

In *Jones v. Buchanan*, 325 F.3d 520, 532 (4th Cir. 2003), the United States Court of Appeals for the Fourth Circuit clearly addressed the subject: "Ten years before [defendant] Deputy Keller's November 1999 use of force against Jones, the Supreme Court in *Graham v. Connor* had clearly established that all claims of excessive force in the course of any seizure of a free person must be analyzed under an 'objective reasonableness' standard, taking into account the factors discussed above . . . . Both before and after November 1999, courts have consistently applied the *Graham* holding and have consistently held that officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity." Hence, police use of excessive force, in the Fourth Amendment pre-apprehension context, violates "clearly established" federal law. The Fourth Circuit reiterated this established principle in *Meyers v. Baltimore County*, 713 F.3d 723, 734-35 (4th Cir. 2013), a case specifically involving the use of a taser. Likewise, this Court has applied the same established principle, in the context of taser use, in *Dent v. Montgomery County*, 745 F.Supp.2d 648, 661 (2010).[25]

Notably, as well, qualified immunity arguments *per se* fail in this Circuit where the officer

---

[25] Plaintiffs note that pre-Incident federal decisions such as *Snauer v. City of Springfield*, 09-cv-6277, 2010 WL 4875784 (D. Ore. Oct. 1, 2010), discussed above, address unreasonable force in the taser context, although as *Jones*, *Meyers*, and other Fourth Circuit precedent make clear, the "clearly

does not contend that he acted reasonably *given the version of events presented by the plaintiff* (reconfirming, correspondingly, that factual disputes preclude summary judgment). *See Cook v. Riley*, 11-cv-24, 2012 WL 2239743, *6 (M.D.N.C. June 15, 2012).[26]

Finally, of course, given Plaintiffs' theory of the case (*see* Exhibit A, at 1-2; Exhibit B, at 1-2), Defendant Rawlins' tasing also violates "clearly established" Fourth Amendment principles of *Tennessee v. Garner*, as addressed above. *See Garner*, 471 U.S. at 7-22, 105 S.Ct. 1699-1707.[27]

### 4. District Court's Discretion to Deny Summary Judgment, Allow Record to Further Develop

Under established federal Rule 56 principles, a District Court has discretion to deny

---

established" prong is not that fact-specific in the Fourth Amendment excessive force context.

[26] *See also Denney v. Tucker*, 545 Fed.Appx. 211, 217 (4th Cir. 2013) (District Court's denial of qualified immunity in § 1983 action brought by inmate against county detention center officials, alleging that the officials failed to protect him from other inmates who beat him up, ultimately turned on unresolved questions of fact as to whether the officials knew of an imminent, serious threat to the physical safety of the inmate, and thus, Court of Appeals did not possess jurisdiction over officials' appeal as to District Court's qualified immunity determination).

[27] In the case at bar, Plaintiffs have overcome the second prong of the qualified immunity test; that being, that the right was "clearly established" at the time of the event at issue. A decided case is not necessary in order for police officers to be on fair notice that conduct like that by Detective Rawlins is violative of the U.S. Constitution. *See Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692 (1999) (holding that the precise conduct need not have been previously held unlawful in order for qualified immunity to be forfeited); *Amaechi v. West,* 237 F.3d 356 (4th Cir. 2001) (denying qualified immunity and rejecting argument that previously decided case must have held that bare-handed penetration of female genitalia during pat down search was unconstitutional). Plaintiffs disagree that applicable caselaw is "nascent." Caselaw continues its "evolution" in most areas of the law, and it is clear that any reasonable police officer, allegedly trained in the use of a taser, at the time of the Incident knew that tasing a person will, at the least, partially disable, and more likely than not, instantly incapacitate that person, causing a person in a precarious position to fall. Also, any reasonable person, especially a police officer, at the time of the Incident knew that a fall from such an elevated position is extremely dangerous, and possibly deadly. The case at bar is not a "close call" case involving the use of a taser. The case at bar is at the end of the spectrum where it is objectively clear that this use of force was excessive. Plaintiff Rockwell was outside of his bedroom window, standing on the narrow second story roof/ledge, at an elevated position, not actively fleeing, when Defendant Rawlins tased him. Furthermore, as detailed above, Courts have discussed the use of tasers and it is clear that reasonable officers at the time of the Incident knew that: a taser

summary judgment, allowing the factual record to develop and/or allowing detailed issues to be presented at trial for resolution.  *See Andrew v. Clark*, 561 F.3d 261, 271 (4th Cir. 2009).  "Denial of summary judgment is an appropriate exercise of the court's discretion if the court believes that the better course would be to proceed to full trial."  *Saint John's African Methodist Episcopal Church v. Guideone Specialty Mut. Ins. Co.*, 902 F.Supp.2d 783, 788 (E.D. Va. 2012).  Particularly in a case where deposition testimony did not occur during discovery, it would be well founded for this District Court, in a situation where the Court contemplated granting summary judgment on the briefing record, to deny requested summary judgment in such a situation and allow the case, and the testimony as to the particulars of what occurred, to advance to trial.[28]

### B.   Defendant Rawlins is *not* Entitled to Summary Judgment In his Favor as to Asserted Contributory Negligence

In the last paragraph of page 11 of Detective Rawlins' summary judgment memorandum, Defendant argues that Plaintiffs have not *prima facie* established a claim for gross negligence.  *See* ECF Doc. No. 67-1, at 11.  That argument has no merit.  Under Plaintiffs' theory of the case, Daniel Rockwell had no object in his waistband; had his hands exposed at all times; and was not walking on the roof in an unusually rapid manner.  *See* Exhibit A, at 1-2.  In addition, there are the adverse inferences a jury is entitled to draw against Defendant Rawlins, discussed above, not the least of which is that Rawlins and the other officers engaged in a post-Incident collaborative lie to attempt to invent a "deadly force" defense having no basis in reality (because Rawlins knew Rawlins acted illegally).  A jury would be entitled to find that Rawlins intentionally tased Rockwell without legal justification or excuse; a jury would be entitled to find that Rawlins, without legal justification or

---

is designed to incapacitate instantly, that a person in an elevated position is likely to fall, and that a fall from an elevated position can likely be deadly or cause grave bodily injuries.

[28]   As an example, Plaintiffs are not aware that the summary judgment record reflects the relative physical size of Detective Rawlins vs. Daniel Rockwell, which may be relevant to a jury in

excuse, with gross negligence tased Rockwell.[29]

At pages 11-12 of his summary judgment memorandum, Detective Rawlins also argues that summary judgment should be entered on Plaintiffs' gross negligence cause of action, asserting Plaintiffs' contributory negligence.  The request fails as both a legal and procedural matter.

"Gross negligence" is not "negligence."  As the Fourth Circuit U.S. Court of Appeals stated in *Henry v. Purnell* 652 F.3d 524, 536 (4th Cir. 2011) (*en banc*), "[a]n officer's actions are grossly negligent when they are 'so heedless and incautious as necessarily to be deemed unlawful and wanton, manifesting such a gross departure from what would be the conduct of an ordinarily careful and prudent person under the same circumstances so as to furnish evidence of indifference to consequences'" (quoting *State v. Albrecht,* 336 Md. 475, 649 A.2d 336, 348 (1994) (internal quotation marks and citation omitted)).  *See also Johnson v. Mountaire Farms of Delmarva, Inc.*, 305 Md. 246, 254, 503 A.2d 708, 712 (1986).  Whether an officer's actions are grossly negligent, and therefore unprotected by statutory immunity, is generally a question for the jury.  *See Taylor v. Harford County Dep't of Soc. Servs.,* 384 Md. 213, 862 A.2d 1026, 1034 (2004).

Whether Defendant Rawlins, by tasing Plaintiff Rockwell, a mentally disturbed minor, while Plaintiff Rockwell was outside of his bedroom window, standing on a narrow second story roof/ledge, at an elevated position and not actively fleeing, causing Daniel to fall from the roof to the ground, thereby fracturing his vertebrae, was grossly negligent, is a question of fact to be determined by a jury.

In Maryland, of course, contributory negligence generally bars a plaintiff's recovery as to a

---

determining the "excessive force" issue.
[29]  Parenthetically, Defendant's argument makes no sense, as a practical matter.  Defendant makes no claim-specific argument that Plaintiffs have not met the elements to establish Assault and/or Battery, which are *intentional* torts, requiring a *higher* degree of *mens rea* than gross negligence.  *A fortiori*, Plaintiffs have met the *mens rea* for gross negligence.

*negligence* cause of action.  However, that is *not* the law as to *gross negligence*.  That is covered by

the Maryland Court of Special Appeals' opinion in *Saba v. Darling*, 72 Md.App. 487, 531 A.2d 696

(1987), *aff'd*, 320 Md. 45, 575 A.2d 1240 (1990).  In *Saba*, the Court of Special Appeals (Gilbert,

C.J.) recognized that the issue of whether contributory negligence bars a gross negligence claim had

not been decided under Maryland law; nor did the Court explicitly decide the question in *Saba*.  *See*

*id*. at 492, 531 A.2d at 698.  But the Court did address the issue, quoting the RESTATEMENT

(SECOND) OF TORTS (1965) § 482:

> Reckless Conduct.
>
> (1) Except as stated in Subsection (2), a plaintiff's contributory negligence does not bar recovery for harm caused by the defendant's reckless disregard for the plaintiff's safety.
>
> (2) A plaintiff whose conduct is in reckless disregard of his own safety is barred from recovery against a defendant whose reckless disregard of the plaintiff's safety is a legal cause of the plaintiff's harm.

*Saba*, 72 Md.App. at 491, 531 A.2d at 697-98.  In addition, the *Saba* court quoted the treatise

*Prosser and Keaton on Torts* (5th ed. 1984), as follows:  "The ordinary contributory negligence of

the plaintiff is to be set over against the ordinary negligence of the defendant, to bar the action.  But

where the defendant's conduct is actually intended to inflict harm upon the plaintiff, there is a

difference, not merely in degree but in the kind of fault; and the defense never has been extended to

such intentional torts.  Thus it is no defense to assault or battery.  *The same is true of that*

*aggravated form of negligence, approaching intent, which has been characterized variously as*

*'willful,' 'wanton,' or 'reckless,' as to which all courts have held that ordinary negligence on the*

*part of the plaintiff will not bar recovery*.  Such conduct differs from negligence not only in degree

but in kind, and in the social condemnation attached to it."  *Saba*, 72 Md.App. at 490, 531 A.2d at

697 (emphasis added).

As the foregoing favorable, extended citations demonstrate, although *Saba* did not explicitly decide the issue, the opinion nonetheless reasonably establishes that Maryland law follows the consensus view that ordinary contributory negligence is *not* a bar to a gross negligence cause of action.  As noted, *Saba* quotes the RESTATEMENT (SECOND) OF TORTS (1965) § 482.  The Maryland Court of Appeals, on almost uncountable occasions, has adopted or favorably applied principles stated in the RESTATEMENT (SECOND), including TORTS, further reconfirming its inclusion in Maryland law.  *See, e.g.*, *Gourdine v. Crews*, 405 Md. 722, 738-39, 955 A.2d 769, 779 (2008) (§ 388); *Todd v. MVA*, 373 Md. 149, 164-65, 816 A.2d 930, 939 (2003) (§ 314A); *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 432, 601 A.2d 633, 638-39 (1992) (§ 402A).  For these reasons, Maryland law does not recognize application of ordinary contributory negligence in the gross negligence context.

Furthermore, the doctrine of "contributory negligence" does not translate well into the police excessive force context.  Almost all "excessive force" cases involve a suspect who is alleged to have done something actually, or potentially, illegal.  To bar Daniel Rockwell's gross negligence claim in this case as a matter of law, essentially means that (likely) a majority of gross negligence excessive force claims would likewise be barred, the police defendant(s) arguing that the suspect/plaintiff "shouldn't have been in the situation to begin with."  Yet, that is not the point of "excessive force" legal protections, which is that the police are under an ongoing, dynamic obligation not to use unreasonable force, even in the face of changing circumstances, even as circumstances change in a matter of *seconds*.  Similarly, the United States Court of Appeals for the Fourth Circuit rejected a contributory negligence defense in the context of a simple state-law products liability / failure to warn claim involving production of tasers, in the case of *Fontenot v. Taser Int'l, Inc.*, 736 F.3d 318 (4th Cir. 2013) (applying North Carolina law).  The Fourth Circuit stated:  "we observe that

application of the contributory negligence doctrine under the present circumstances would absolve

TI of its responsibility to provide adequate warnings to persons using TI's tasers . . . .  At its core,

TI's position is that contributory negligence should be applied as a blanket proposition to bar

recovery for all incidents in which a person is involved in a dispute, does not surrender to

authorities, and is subdued or killed by a police officer's use of a taser.  Such a situation, however,

will be present in nearly every instance in which a taser is deployed by a law enforcement officer.

Moreover, such circumstances are the very reason why law enforcement agencies use products like

the X26 taser." *Id.* at 331.

    In addition, alternatively, contributory negligence is an affirmative defense, the defendant

bearing the burden of proof.  Application of contributory negligence at the summary judgment stage

– at least in this case – would be legal error.  As addressed, there exist numerous vigorously

contested disputes of fact to be resolved; hence, the Court is not even in a position to know what the

underlying facts are, to attempt to apply any affirmative defense as a matter of law.  This Court well

made this point in *Waterman v. Batton*, 294 F.Supp.2d 709 (D. Md. 2003), *vacated on other

grounds*, 393 F.3d 471 (4ᵗʰ Cir. 2005), which was a police deadly force case.  As to *Waterman*

defendants' assertion of contributory negligence at the summary judgment stage, Judge Blake

reasoned: "Whether the plaintiff was contributorily negligent generally is reserved for the jury: 'It

is only where the minds of reasonable persons cannot differ that the court is justified in deciding the

question as a matter of law.'" *Waterman*, 294 F.Supp.2d at 738 (quoting *Moodie v. Santoni*, 292

Md. 582, 441 A.2d 323, 327 (1982)).[30]  In *Waterman*, this Court further reasoned, "[t]he defendants

---

[30]  In *Waterman*, this Court made reference only to "state law claims" (Counts Four – Seven) in the
contributory negligence section of its opinion, and did not distinguish between simple negligence,
gross negligence, or other claims.  *See Waterman*, 294 F.Supp.2d at 737-39.  Earlier in the opinion
(*see* 294 F.Supp.2d at 722) this Court identified those "state law claims" as follows:  gross
negligence (Count Four); MTCA (Count Five); Wrongful Death (Counts Six and Seven).  As stated,

have not provided any evidence that [suspect/decedent] Josh Waterman knew and appreciated the danger of injury to himself, nor have they addressed how his current mental state would affect such a finding." *Id*. This point is particularly apt, here, as well:  the decedent in *Waterman* had mental health issues, analogous to the emotional / mental difficulty / challenge concerns of Plaintiff Rockwell at the time of the Incident, and those subjective symptoms are applied by a trier of fact, on any contributory negligence defense (if properly before the Court).

Also, in *Waterman*, this Court establishes that not only would defendants have to affirmatively prove plaintiff's negligence as a matter of law, but defendants would also have to prove that such negligence was the *proximate cause* of a plaintiff's injuries, which cannot be done as a matter of law (at least on this record). *See Waterman*, 294 F.Supp.2d at 738-39.  Accordingly, this Court held:  "the defendants have failed to carry their burden on a motion for summary judgment of establishing that 'the minds of reasonable persons could not differ' that the actions of Josh Waterman and the plaintiffs amounted to contributory negligence." *Id*. at 739.

Defendant's assertion of a contributory negligence affirmative defense, as to Plaintiffs' gross negligence cause of action, fails at this summary judgment stage.[31]

## IV.    CONCLUSION

Whether Defendant Rawlins, by shooting Plaintiff Rockwell with a taser while Mr. Rockwell

---

in addressing the contributory negligence asserted defense in *Waterman*, this Court did not make any distinction between "gross negligence" and other asserted grounds of recovery, perhaps because the point was not raised by the parties, perhaps because the Court did not consider it necessary to its resolution of the issue.

[31]   Defendant's citation to *Lindstrom v. City of Corry*, 563 Pa. 579, 763 A.2d 394 (2000) (*see* ECF Doc. No. 67-1, at 12), is pointless.  The opinion makes no reference to "gross negligence."  That page cited by Defendant (i.e., 563 Pa. at 582) does not even address contributory negligence, as such, but instead focuses upon interpretation of Pennsylvania statutory framework.  The ultimate holding in the case is that the government owed no common law duty to the decedent, thus barring recovery under the statute (*see* 563 Pa. at 585, 763 A.2d at 397), which has nothing to do with Maryland law, gross negligence, or contributory negligence.

was outside of his bedroom window, standing on a narrow second story roof/ledge, at an elevated position and not actively fleeing, causing Daniel to fall from the roof to the ground, thereby fracturing his vertebrae, was reasonable, is a question of fact.  A reasonable trier of fact could conclude that Defendant Rawlins acted without legal justification and with malice towards Daniel Rockwell.  Viewing the evidence in the light most favorable to Plaintiffs, Defendant's apprehension of Plaintiff Rockwell constituted excessive action and constitutes actionable assault and actionable battery.  Additionally, whether Detective Rawlins acted with malice involves questions of fact to be determined by the trier of fact.

In *Henry v. Purnell*, the United States Court of Appeals for the Fourth Circuit, sitting *en banc*, recognized:  "'[A]n officer's good intentions' do not make objectively unreasonable acts constitutional . . . .  Although officers are only human and even well-intentioned officers may make unreasonable mistakes on occasion, the doctrine of qualified immunity does not serve to protect them on those occasions."  *Henry*, 652 F.3d at 535 (citation omitted).  On this record, a jury would be entitled to find that Detective Rawlins made (at least) an "unreasonable mistake."  This record would also justify a finding that Rawlins acted wantonly and/or with malice in tasing Rockwell, including as justifies an award of punitive damages.  This record raises serious questions as to the credibility of Rawlins and the other officers.  All of this is for a jury to determine.  Summary judgment is properly denied.

_____/s/_____
Michael S. Greene (Federal Bar No. 11797)
MICHAEL S. GREENE, P.A.
11-A Gwynns Mill Court
Owings Mills, Maryland 21117
telephone: (410)363-9414
fax: (410)363-2659
email: mgreene@greenelegal.com
*Attorney for Plaintiffs, Daniel L. Rockwell and Demetria R. Holden*
