IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| DANIEL L. ROCKWELL, *et al.*, | * |
| Plaintiffs, | * |
| v. | *        Civil Action No. RDB-13-3049 |
| DETECTIVE CLYDE RAWLINS, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In this action, Plaintiffs Daniel L. Rockwell ("Rockwell") and his mother, Demetria R. Holden ("Holden"), allege that Defendant Detective Clyde Rawlins ("Detective Rawlins") wrongfully tased[1] Rockwell while he was standing on a second-story ledge.[2]  Plaintiffs assert that Detective Rawlins' use of the taser violated the Fourth and Fourteenth Amendments of the United States Constitution and Article 26 of the Maryland Declaration of Rights, and further allege that the tasing constituted gross negligence.  Currently pending before the Court is Defendant Detective Clyde Rawlins' Motion for Summary Judgment (ECF No. 67).  The parties' submissions have been reviewed, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, Detective Rawlins' Motion for Summary Judgment (ECF No. 67) is DENIED.

---

[1] A Taser or Electronic Shock Device is a hand-held weapon that delivers a strong shock designed to temporarily incapacitate the target.  The Taser used in this case fired two small prongs that lodge in the target's skin in order to deliver the shock.  This Court refers to the use of a Taser as "tasing" or "tasering."

[2] Plaintiffs have also asserted a claim under *Monell v. Dep't of Soc. Serv. Of City of New York*, 436 U.S. 658 (1978) against the Baltimore Police Department.  As explained herein, the claim against the Department has been bifurcated and stayed awaiting the conclusion of these proceedings against Detective Rawlins.  *See infra* n.9.

BACKGROUND

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). This Court has previously summarized the facts of this case, most recently in its Memorandum Opinion & Order on Detective Rawlins' motions to strike, *see* ECF No. 80; accordingly, this Court draws upon those previous recitations to the extent those facts are not in dispute.

This case arises out of the execution of a warrant to arrest Plaintiff Daniel L. Rockwell ("Rockwell") in Baltimore City, Maryland. On February 8, 2011, Defendant Detective Clyde Rawlins ("Detective Rawlins") along with several other officers[3] arrived at Plaintiffs' home at 4425 Wrenwood Avenue, Baltimore City, Maryland 21212 in order to execute the warrant. At that time, Rockwell was on home detention and was a minor with a known mental condition.[4] The warrant arose from Rockwell's alleged violation of his home detention, and Rockwell's home detention arose from a previous weapons possession related charge. After Detective Rawlins entered the house, Rockwell exited his second story bedroom window and stood on a ledge or overhang of the house. Defendant Rawlins subsequently tasered Rockwell, causing Rockwell to fall from the roof to the ground and fracture his vertebrae.

---

[3] Detective Richard Manning, School Police Officer Rodney Coffield, and Department of Juvenile Services Officer Leo Zilka were the other individuals accompanied Detective Rawlins to Plaintiffs' home. These officers were originally named as Defendants in this action, but this Court dismissed them by its March 11, 2014 Order.

[4] The precise scope of Rockwell's mental condition has not been thoroughly defined, and the legal effect of that condition has been the subject of some dispute in this matter. *See*, e.g., Det. Rawlins' Mot. Strike Rawlins' Declaration, ECF No. 75.

Plaintiffs[5] filed an action in the Circuit Court for Baltimore City asserting a variety of federal and state claims for money damages against Detective Rawlins, the other individual officers, and the Baltimore City Police Department (ECF No. 2).[6] Thereafter, the Defendants removed the action to this Court pursuant 28 U.S.C. § 1446 and 28 U.S.C. § 1331, and the Defendants filed a number of motions to dismiss.

This Court held a hearing on February 27, 2014, at which Plaintiffs agreed to dismiss numerous counts, including the false arrest, false imprisonment , and negligence claims.[7] Subsequently, this Court dismissed several of the remaining claims against Detective Rawlins and the Baltimore Police Department[8] and all claims against the other named individual officers.  The remaining Counts included claims against Detective Rawlins for assault and battery (Counts I and II), gross negligence (Count VII), violation of Article 26 the Maryland Declaration of Rights (Count XI), and violations of the Fourth and Fourteenth Amendment

---

[5] Demetria R. Holden, Plaintiff Daniel L. Rockwell's mother, also joined this suit as a named Plaintiff.

[6] Specifically, the Complaint alleged assault (Count I), battery (Count II), false arrest (Count III), false imprisonment (Count IV), intentional infliction of emotional distress (Count V), negligence (Count VI), gross negligence (Count VII), negligent hiring, retaining, training, and supervision (Count VIII), civil conspiracy (Count IX), violations of Articles 24 and 26 of the Maryland Declaration of Rights (Counts X and XI), and federal claims under the Fourth and Fourteenth Amendments and 42 U.S.C. §§ 1983, 1985, and 1986 (Count XII).

[7] Specifically, in the papers, counsel for Plaintiffs agreed to dismiss Count I (assault) and Count II (battery) with respect to all Defendants except Detective Clyde Rawlins.  See Pls.' Resp. 17, ECF No. 40-1.  In addition, Plaintiff agreed to dismiss Count III (false arrest), Count IV (false imprisonment), and Count VI (negligence) with respect to all Defendants.   See Pls.' Resp. 17, 19, ECF No. 40-1.  At the hearing, Plaintiff also agreed to the dismissal of Counts V (intentional infliction of emotional distress), Count VII (gross negligence), and the State Constitutional claims with respect to Officer Zilka, Officer Coffield, and Detective Manning.

[8] Specifically, this Court dismissed the claims for intentional infliction of emotion distress (Count V) and civil conspiracy (Counts IX and X) as to Detective Rawlins and all claims except the federal claims as to the Baltimore Police Department.

and 42 U.S.C. § 1983 (Count XII); Plaintiffs' § 1983 claim against the Baltimore Police Department for violation of the Fourth and Fourteenth Amendment (Count XII) survived as well.

Thereafter, upon the Baltimore Police Department's motion, this Court bifurcated the case. Trial as to the claims against Detective Rawlins was scheduled for November 10, 2014, and the case was stayed as to the Baltimore Police Department.[9]

Detective Rawlins filed the pending Motion for Summary Judgment on July 25, 2014. Plaintiffs filed their response brief on August 29, 2014, and attached a declaration made by Plaintiff Rockwell as an exhibit in support. On September 11, 2014, Plaintiffs served their answers to interrogatories and responses to requests for production by email and U.S. Mail—well after the discovery deadline. Detective Rawlins moved to strike both Plaintiff Rockwell's Declaration and Plaintiffs' Answers to Interrogatories and Response to Request for Production of Documents, arguing that Plaintiffs had failed to provide timely discovery and that Plaintiff Rockwell was incapable of providing competent testimony. On October 8, 2014, Detective Rawlins filed an Unopposed Motion to Postpone (ECF No. 79).

After denying Detective Rawlins' motions to strike, this Court held a conference call on October 15, 2014. Ultimately, this Court granted the Unopposed Motion to Postpone, rescheduled the trial date for the week of March 9, 2015, and reopened discovery. The previously filed Motion for Summary Judgment, however, remained pending.

---

[9] This procedure comported with this Court's prior ruling in *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318 (D. Md. 1991), and allowed the case to proceed against the individual officers first. If Plaintiffs are able to prove a constitutional violation by Detective Rawlins, they will then be permitted to pursue their *Monell* claim against the Baltimore Police Department. This procedure allows for quick resolution of the question of a constitutional violation and prevents the case from being bogged down in the "possibly extensive evidence necessary to show a custom or pattern of constitutional violations sufficient to hold the inactive Defendants liable." *See id.* at 320.

<u>STANDARD OF REVIEW</u>

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

ANALYSIS

**I.     Excessive Force**

Detective Rawlins argues that he is entitled to summary judgment on all of Plaintiffs' claims because his actions were reasonable under the Fourth Amendment. The Fourth Amendment guarantees the "right to be free from unreasonable searches and seizures, which encompasses the right to be free of arrests, investigatory stops, or other seizures effectuated by excessive force." *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006). Whether the force used to effectuate the arrest was excessive depends on whether the officer's "actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). In making this determination, the court considers such factors as "the severity of the crime, whether there is an immediate threat to the safety of the officers or others, and whether the subject is resisting arrest or attempting to flee." *Barnes v. Medical Dep't Wash Cnty. Jail*, 2013 WL 4176961, at *3 (D. Md. Aug. 14, 2013) (citing *Graham*, 490 U.S. at 396). The court approaches the analysis "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. When officers are faced with "an obvious, serious, and immediate threat to their safety," they are not required "to gamble with their lives." *Elliot v. Leavitt*, 99 F.3d 640, 641 (4th Cir. 1996).

The parties' main dispute centers around the facts leading to Plaintiff Rockwell's tasing. Detective Rawlins provides the following summary:

> Plaintiff Rockwell began pacing the overhang and due to the wrap around style porch overhang around the oriel window, Defendant momentarily lost sight of Plaintiff Rockwell. When Plaintiff Rockwell reappeared he approached Defendant in a rapid and unstable manner and Defendant was not able to retract back inside the window fast enough to get out of the path of Plaintiff Rawlins.  Defendant ordered Plaintiff Rockwell to expose his hands and Plaintiff Rockwell failed to comply, while continuing to advance towards Defendant. Plaintiff Rockwell reached his hands toward his waistband, appearing to manipulate an object. Based on the source of the original warrant, his unpredictable behavior and unknown intentions, Defendant feared for his safety and tased Plaintiff Rockwell in his upper torso area to stop his aggressive advance towards Defendant.

Def.'s Mem. Supp. Mot. Summ. J. 4 (internal citations omitted).  On the other hand, Plaintiff Rockwell states that he was attempting to comply with the officers' directions and to reenter the house and he denies that Detective Rawlins demanded to see his hands.  Pls.' Resp. 4.  Plaintiff Rockwell also denies walking towards Detective Rawlins "in an unusually rapid manner" and reaching for anything in his waistband area.  *Id.*

As these different accounts indicate, the facts are very much in dispute in this case,[10] and those facts lead, unsurprisingly, to divergent legal conclusions.  In Plaintiffs' account, Detective Rawlins tased an unarmed suspect, who was precariously perched on a second floor ledge and who had terminated his flight and was attempting to comply with police directions.  A number of decisions support the conclusion that the use of a taser on an unarmed suspect in such a precarious position without any warning constitutes excessive

---

[10] There are also apparent credibility issues in this case. As noted above, Detective Rawlins has challenged Plaintiff Rockwell's ability to provide competent testimony.  On the other hand, Plaintiffs have asserted that the Baltimore Police Department maintained for several months that there were no reports of the incident before finally turning over them over; additionally, Plaintiffs state that no investigative report package was prepared.  *See* Pls.' Mem. Supp. Mot. Summ. J. 6; *see also id.* Ex. C., ECF No. 73-4.

force.  *See* Pls.' Resp. 11-13, ECF No. 73-1 (discussing *Snauer v. City of Springfield*, 09-cv-6277,

2010 WL 4875784 (D. Ore. Oct. 1, 2010) (fleeing suspect tased while on top of six-seven

foot fence); *Cook v. Riley*, 11-cv-24, 2012 WL 2239743 (M.D.N.C. June 15, 2012) (suspect

tased while in tree); *Negron v. New York*, 976 F. Supp. 2d 360 (E.D.N.Y. 2013) (uncooperative

and mentally unstable suspect tased while standing in elevated position approximately ten

feet off the ground)).

Under Detective Rawlins' version of the facts, however, Detective Rawlins made a

split-second decision in order to neutralize the threat posed by an uncooperative and

unpredictable individual who appeared to be reaching for something in his waistband.

Detective Rawlins analogies this case to *McKenney v. Harrison*, 635 F.3d 354, 359 (8th Cir.

2011), where the United States Court of Appeals for the Eighth Circuit found no violation

of the Fourth Amendment when officers used a taser on a fleeing suspect who subsequently

fell out of an open windows.  *See* Def.'s Mem. Supp. Mot. Summ. J. 7-8, ECF No. 67-1.  In

*McKenney*, police had originally discovered the suspect in a second-story bathroom in a state

of undress, and they escorted him into an adjacent bedroom in order to put on some clothes.

The officers noticed that the suspect, who had previously fled from a traffic stop, was

nervously glancing at the bedroom's windows, which overlooked the roof of an enclosed

porch; accordingly, one officer directed the suspect not to "do anything stupid," while the

other unholstered her taser and stated that "you don't want to be tased."  Nevertheless, the

suspect made a break for the window.  While one officer tased the suspect before he reached

the window, the suspect did not drop to the floor immediately, and he continued through

the window before falling off the porch roof.  The suspect eventually died from the injuries

he sustained in the fall.   The Eight Circuit found that the level of force was reasonable because the suspect had been warned and because "a reasonable officer, knowing that a Taser is designed to incapacitate instantly, could have believed that the force would incapacitate [the suspect] before he reached the window, while he was not in an 'elevated position' and likely to fall." *Id.* at 360.

Notably, the legal authorities quoted by the parties are in little—if any—conflict. While tasers may not constitute deadly force in some scenarios,[11] deadly force was clearly used in this case.  Rockwell was standing on a narrow second-story ledge/roof, and there is no evidence to suggest that a reasonable police officer would not have expected Rockwell to fall if he was tased.  As such, the main issue is whether a reasonable police officer would have believed that Rockwell posed such a substantial threat as to justify the use of deadly force.  As noted above, the parties present two different accounts of the facts leading up to the tasing.  It is not this Court's role to determine which story to credit at this stage of this proceeding; of course, that decision is for the jury.[12]  Accordingly, summary judgment will be denied with respect to Detective Rawlins' excessive force claims.

---

[11] For example, in *Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010), the United States Court of Appeals for the Ninth Circuit characterized tasers as an "intermediate or medium, though not insignificant, quantum of force." *Id.* at 826 (quoting *Sanders v. City of Fresno*, 551 F. Supp. 2d 1149, 1168 (E.D. Cal. 2008)).

[12] These factual questions also foreclose a determination of Detective Rawlins' qualified immunity at this stage.  While Detective Rawlins has offered some legal support for his contention that a police officer may tase a fleeing suspect, this Court finds that it is clearly established that an officer may *not* tase a cooperating suspect where the tasing presents a very real risk of serious bodily harm.  *See Henry v. Purnell*, 652 F.3d 524, 532-33 (4th Cir. 2011) (*per curiam*) (holding that use of deadly force to apprehend a fleeing suspect who poses no significant threat of death or serious injury to the officer or others was unconstitutional); *Barnes v. Medical Dep't Washington Cnty. Jail*, Civ. A. No. DKC-12-1994, 2013 WL 4176961, at *8 (D. Md. Aug. 14, 2013) (granting summary judgment to officer who tased fleeing suspect, who had history of flight, because use of "non-deadly force" was justified.)

## II.    Gross Negligence

Detective Rawlins also argues that he is entitled to summary judgment on Plaintiffs' gross negligence claim; specifically, Detective Rawlins argues that there is no evidence that he acted intentionally or was "utterly indifferent to the rights" of Rockwell, and he further asserts that Plaintiff Rockwell was contributorily negligent.    Under Maryland law, gross negligence entails:

> an intentional failure to perform a manifest duty in reckless disregard of the consequences as *affecting the life or property of another*, and [it] also implies a thoughtless disregard of the consequences without an exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.

*Barbre v. Pope*, 402 Md. at 187, 935 A.2d at 717 (emphasis added).

The RESTATEMENT (SECOND) OF TORTS § 482 states that "a plaintiff's contributory negligence does not bar recovery for harm caused by the defendant's reckless disregard for the plaintiff's safety."  However, there is no definitive Maryland case law explaining the relationship between gross negligence and contributory negligence, and it appears that the United States Court of Appeals for the Fourth Circuit has determined that the Maryland would reject the Restatement's rule.  *See Ramos v. Southern Maryland Elec. Co-op., Inc.*, 996 F.2d 52, 54-55 (4th Cir. 1993) ("Maryland never has held that contributory negligence does not bar gross negligence. To the contrary, many cases have suggested just the opposite in dicta."

---

Moreover, this Court notes that the factual uncertainties with respect to the tasing similarly prevent summary judgment on Plaintiffs' other claims for assault, battery, and violation of Article 26 of the Maryland Declaration of Rights.

(citing *Harrison v. Montgomery County Bd. of Educ.*, 295 Md. 442, 451, 456 A.2d 894, 898 (1983); *Stancill v. Potomac Elec. Power Co.*, 744 F.2d 861, 865 n. 21 (D.C.Cir.1984); *Ladnier v. Murray*, 572 F. Supp. 544, 547 (D. Md.1983), *rev'd in part, vacated in part, on other grounds*, 769 F.2d 195 (4th Cir. 1985))); *Gallardo v. FedEx Kinko's Office & Print Services, Inc.*, Civ. A. No. 08-392-JFM, 2008 WL 2143011, *2 (D. Md. May 12, 2008) (quoting *Ramos* and finding that contributory negligence is an applicable defense to gross negligence claim); *but see Liscombe v. Potomac Edison Co.*, 303 Md. 619, 636-37 (1985) (assuming without deciding "that contributory negligence is not a defense in tort cases in which gross negligence has been shown"); *Saba v. Darling*, 72 Md. App. 487, 492 (Md. Ct. Spec. App. 1987) (refusing to decide whether contributory negligence is a defense to gross negligence claim).[13]  In light of the death of any more recent guidance from Maryland courts, this Court is compelled to follow the Fourth Circuit's construction of Maryland law.

However, while Detective Rawlins may raise a contributory negligence defense, summary judgment on Plaintiffs' gross negligence claim would be inappropriate.  In general, the existence of contributory negligence is a decision for the jury unless the undisputed facts of the case support such a finding as a matter of law.  *Gallardo*, 2007 WL 2143011, at *3.  In this case, as discussed above, the facts are very much in dispute, and the ultimate question of contributory negligence must be left for determination by the jury.

---

[13] In the context of criminal involuntary manslaughter, however, Maryland courts appear to have come to the opposite conclusion.  *See Duren v. State*, 203 Md. 584, 593 (1954) ("If the appellant was guilty of gross negligence, he cannot excuse his conduct and escape the consequences by showing that the deceased was guilty of contributory negligence.").

<u>CONCLUSION</u>

For the reasons stated above, Defendant Detective Rawlins' Motion for Summary Judgment (ECF No. 67) is DENIED.

A separate Order follows.

Dated:        October 23, 2014                          _____/s/_____

                                                        Richard D. Bennett
                                                        United States District Judge